NASHUA AND LOWELL RAILROAD CORPORA-
TION *v.* BOSTON AND LOWELL RAILROAD
CORPORATION.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE DISTRICT OF MASSACHUSETTS.

No. 166. Argued December, 16, 17, 1889; March 31, 1890.—Decided May 19, 1890.

Railroad corporations, created by two or more States, though joined in
their interests, in the operation of their roads, in the issue of their stock
and in the division of their profits, so as practically to be a single corpo-
ration, do not lose their identity; but each has its existence and its
standing in the courts of the country only by virtue of the legislation of
the State by which it was created, and the union of name, of officers, of
business and of property does not change their distinctive character as
separate corporations.

The Nashua and Lowell Railroad Corporation was incorporated. by the
State of New Hampshire June 23, 1835, "to locate construct and keep
in repair a railroad from any point in the southern line of the State
to some convenient place in or near Nashua," seven persons being named
as incorporators. The Nashua and Lowell Railroad Corporation, (three
out of the seven being named as incorporators,) was incorporated by the
State of Massachusetts on the 16th of April, 1836, "to locate, construct
and finally complete a railroad from Lowell" " to form a junction with
the portion of said Nashua and Lowell Railroad lying within the State
of New Hampshire." The legislature of Massachusetts, on the 10th
of April, 1838, enacted that " the stockholders" of the New Hampshire
Company " are hereby constituted stockholders" of the Massachusetts
Company, "and the said two corporations are hereby united into one
corporation," and further provided that the act should " not take effect
until the legislature of . . . New Hampshire shall have passed an act
similar to this uniting the said stockholders into one corporation, nor
until the said acts have been accepted by the said stockholders." The
legislature of New Hampshire, on the 26th of June, 1838, enacted " that
the two corporations . . . are hereby authorized, from and after the

time when this act shall take effect, to unite said corporations, and from and after the time said corporations shall be united, all property owned, acquired or enjoyed by either shall be taken and accounted to be the joint property of the stockholders, for the time being, of the two corporations." A common stock was issued for the whole line, and for the forty-five years which intervened the two properties were under the management of one board of directors; but there was no other evidence that the stockholders had acted on these statutes; *Held*, that the New Hampshire Corporation, being a citizen of that State, was entitled to go into the Circuit Court of Massachusetts, and bring its bill there against a citizen of Massachusetts; and that its union or consolidation with another corporation of the same name, organized under the laws of Massachusetts, did not extinguish or modify its character as a citizen of New Hampshire, or give it any such additional citizenship in Massachusetts, as to defeat its right to go into that court.

While, as a general rule, the directors of a railroad company cannot, without the previous approval of their stockholders, authorize the construction of a passenger station in a city situated in a State foreign to that in which the company was created, and to which its own road does not extend, and cannot make the company responsible for any portion of the cost of such construction; yet, the fact that such increased facilities at Boston were necessary to enable the joint management under the contract between the Boston and Lowell and the Nashua and Lowell Companies to retain the extended business, common to both, justified the directors of the Nashua Company in incurring obligations on account of such expenditures, and brought them within the general scope of directors' powers.

A contract between two railroad companies, situated in different States, for the management of the business common to both by one of them, with an agreed division of receipts and expenses, does not warrant the managing company in purchasing at the common expense, the control of a rival line, without the assent of the stockholders of the other company.

IN EQUITY. Decree dismissing the bill. Plaintiff appealed. The cause being reached on the calendar, it was argued on the merits on the 16th and 17th of December, 1889. Subsequently, the court having expressed a desire to have the views of counsel, either orally or by brief, upon the jurisdiction of the Circuit Court, the counsel for the plaintiff moved, on the 17th March, 1890, for leave to argue that question; and, leave being granted, it was argued on the 31st March, 1890.

The questions at issue on the merits, as well as the question of jurisdiction will be found fully stated in the opinion of the court. For convenience in understanding the points made

by the counsel for the defendant in error on the point of jurisdiction a brief statement of that question is here made, referring to the opinion for more full details.

The State of New Hampshire on the 23d day of June, 1835, incorporated seven persons as the Nashua and Lowell Railroad Corporation, with power to construct a railroad from Nashua to the boundary line of the State of Massachusetts. The State of Massachusetts, on the 16th of April, 1836, incorporated three of those seven persons as the Nashua and Lowell Railroad Corporation with power to construct a railroad from Lowell to form a junction with the portion of the railroad of that company lying within the State of New Hampshire. The State of Massachusetts, on the 10th of April, 1838, enacted that the stockholders of the New Hampshire company were thereby constituted stockholders of the Massachusetts company, and that the two corporations were thereby united into one corporation of the same name, the act to take effect when the legislature of New Hampshire should have passed a similar act, and the stockholders should have accepted those acts. The legislature of New Hampshire, on the 26th day of June, 1838, enacted that the two corporations were empowered to unite; and that, after the union, the property should be the joint property of the stockholders of the two corporations. The material parts of these several statutes are printed in the margin.[1]

---

"[1] I. CHAPTER 37, NEW HAMPSHIRE LAWS, 1835.

"AN ACT TO INCORPORATE THE NASHUA AND LOWELL RAILROAD CORPORATION.

"SECTION 1. That Jesse Bowers, Ira Gay, Daniel Abbot, Benjamin F. French, John M. Hunt, Peter Clark and Charles J. Fox, their associates, successors and assigns, be and hereby are constituted and made a corporation by the name of the Nashua and Lowell Railroad corporation; . . .

"SECT. 2. That said corporation be and hereby is empowered to locate, construct and keep in repair a railroad from any point in the southern line of the State to some convenient place in or near Nashua village in Dunstable, in such manner as they shall deem most expedient, . . ."

"SECT. 12. That said corporation be and hereby is authorized to extend said railroad from its termination at the southern line of this State into and through the Commonwealth of Massachusetts, to meet the Boston and

This suit was brought in the Circuit Court of the United States for the District of Massachusetts by the Nashua and

---

Lowell Railroad, whenever said Commonwealth will empower said corporation so to do, with such powers, liabilities and restrictions as may be deemed expedient; and for this purpose said corporation may increase their capital stock and create new shares as said Commonwealth may authorize them to do."

## "II. CHAPTER 249, MASSACHUSETTS LAWS, 1836.

"AN ACT TO ESTABLISH THE NASHUA AND LOWELL RAILROAD CORPORATION.

"SECTION 1. That Jesse Bowers, Ira Gay and Daniel Abbot, their associates and successors, are hereby made a corporation by the name of the Nashua and Lowell Railroad Corporation, with all the powers and privileges, and subject to all the duties, liabilities and provisions contained in that part of the thirty-ninth chapter of the Revised Statutes, passed November the fourth, in the year one thousand eight hundred and thirty-five, which relates to railroad corporations, and in the forty-fourth chapter of said Revised Statutes; and said corporation is hereby authorized and empowered to locate, construct and finally complete a railroad from Lowell, in the county of Middlesex, to form a junction with that portion of said Nashua and Lowell Railroad, lying within the State of New Hampshire;" . . .

## "III. CHAPTER 96, MASSACHUSETTS LAWS, 1838.

"AN ACT TO UNITE THE NASHUA AND LOWELL RAILROAD CORPORATIONS OF MASSACHUSETTS AND NEW HAMPSHIRE.

"SECT. 1. The stockholders of the Nashua and Lowell Raiload Corporation, incorporated by the Legislature of the State of New Hampshire in the year one thousand eight hundred and thirty-five, are hereby constituted stockholders of the Nashua and Lowell Railroad Corporation, incorporated by the Legislature of this Commonwealth in the year one thousand eight hundred and thirty-six; and the said two corporations are hereby united into one corporation by the name of the Nashua and Lowell Railroad Corporation; and all the tolls, franchises, rights, powers, privileges and property granted or to be granted, acquired or to be acquired, under the authority of the said States, shall be held and enjoyed by all the said stockholders in proportion to their number of shares in either or both of said corporations.

"SECT. 2. The said stockholders shall hold their meetings; make their by-laws, appoint their officers and transact all their business as one corporation; provided, that one or more of the officers of said corporation shall be a resident in this Commonwealth, and one or more of them in the State of New Hampshire, on whom process against said corporation may be legally served, in either State, and that said corporation shall be held to

Lowell Company as a corporation created by and a citizen of New Hampshire; and the jurisdictional question was, whether it was entitled to sue in that character.

answer in the jurisdiction where the service shall be made and the process is returnable."

"SECT. 5. The said corporation, so far as their road is situated in Massachusetts, shall be subject to the general laws of the State to the same extent as the Nashua and Lowell Railroad Corporation, established by its Legislature in the year one thousand eight hundred and thirty-six, would be if this act had not been passed.

"SECT. 6. This act shall not take effect until the Legislature of the State of New Hampshire shall have passed an act similar to this, uniting the said stockholders into one corporation, nor until said acts have been accepted by the said stockholders at a meeting duly called for that purpose, at which meeting the said stockholders may ratify and confirm all or any of their former doings, and adopt them as the acts and proceedings of the said united corporation."

"IV. CHAPTER 21, NEW HAMPSHIRE LAWS, 1838.

"AN ACT TO UNITE THE NASHUA AND LOWELL RAILROAD CORPORATIONS OF MASSACHUSETTS AND NEW HAMPSHIRE AND FOR OTHER PURPOSES.

"SECTION 1. That the two corporations, under the name of the ' Nashua and Lowell Railroad Corporation,' one of which charters was granted by the Legislature of this State, the twenty-third day of June, one thousand eight hundred and thirty-five, and the other by the Legislature of the Commonwealth of Massachusetts, the sixteenth day of April, one thousand eight hundred and thirty-six, are hereby authorized, from and after the time when this act shall take effect, to unite said corporations; and all the tolls, franchises, rights, powers, privileges and property of the said two corporations shall be held and enjoyed by the stockholders in each and both, in proportion to their number of shares therein, and from and after the time said corporations shall be united, all property owned, acquired or enjoyed by either of said corporations shall be taken and accounted to be the joint property of the stockholders, for the time being, of said two corporations.

"SECT. 2. That from and after the time said corporations shall be united, all the stockholders shall be entitled to the same notice, and shall enjoy the same right of voting; . . . *provided always*, that there shall be at least one officer in each State, who is an inhabitant thereof, on whom process against said corporation may be served, and that the books and registry of one corporation shall be taken to be the books and registry of the other corporation."

"SECT. 6. That the said corporation, so far as their road is situated in this State, when united by virtue of the provisions of this act, shall be subject to the general laws of this State, to the same extent as said corporation would have been if this act had not been passed.

*Mr. E. J. Phelps* and *Mr. Francis A. Brooks* for appellant in support of the jurisdiction, and on the merits.

*Mr. J. H. Benton, Jr.*, on the merits, and in opposition to the jurisdiction. On the latter point he said :

I. Plaintiff is clearly a corporation of both Massachusetts and New Hampshire. It was the intention of the legislatures of Massachusetts and New Hampshire to create a new corporation which should owe its existence to the acts of union in each State. *Railroad Company* v. *Georgia*, 98 U. S. 359; *Memphis & Charleston Railroad* v. *Alabama*, 107 U. S. 581.

The New Hampshire act provides that the original corporations " shall be one corporation by the name of the Nashua and Lowell Railroad Corporation." The Massachusetts act provides that the " stockholders of the two corporations are hereby united into one corporation, by the name of the Nashua and Lowell Railroad Corporation."

Each act speaks of the united corporation as one corporation, and provides that there shall be in each State at least one officer, an inhabitant thereof, on whom process against " said corporation may be served;" that the shares of any stockholder " in said company " shall be subject to attachment and execution.

Each provides that stockholders of the united corporation " shall hold their meetings, make their by-laws, appoint their officers and transact all their business as one corporation;" and that " *said corporation* shall be subject to the general laws of each State, so far as their road is situated therein."

The larger part of the road to be built by the united corporation was in Massachusetts, and the legislation of that State cannot possibly be treated as giving a mere license to the New Hampshire corporation to exercise in Massachusetts corporate powers conferred upon it by New Hampshire, as was held to

---

" SECT. 7. That after said corporations shall be united, according to the provisions of this act, they shall be one corporation, by the name of the Nashua and Lowell Railroad Corporation ; and all the acts of said corporations, which are valid in said corporations severally, shall be valid in the united corporation."

be the case in *Pennsylvania Co.* v. *St. Louis, Alton &c. Railroad*, 118 U. S. 290, 296; and in *Goodlett* v. *Louisville Railroad*, 122 U. S. 391, 410.

Besides, unless the Nashua and Lowell Railroad Corporation is one corporation in both States, the decree in this cause will not bind it in Massachusetts, unless it is made a party plaintiff, in which case the Circuit Court would have no jurisdiction. If the cause of action set out in the bill does not belong to the plaintiff as a corporation in both States, but to two distinct corporations by the same name, then it belongs to those corporations jointly, and either is a necessary party plaintiff with the other to any suit upon it.

It was "in truth a single corporation, with the powers of two." *Covington &c. Bridge Co.* v. *Mayer*, 31 Ohio St. 317, 325; *Binney's Case*, 2 Bland, 99, 147; *State* v. *Northern Cent. Railroad*, 18 Maryland, 193, 213; *Quincy Bridge Co.* v. *Adams County*, 88 Illinois, 615; *Chicago &c. Railway* v. *Auditor General*, 53 Michigan, 79; *Mississippi Valley Co.* v. *Chicago &c. Railroad*, 58 Mississippi, 846; *State* v. *Metz*, 32 N. J. Law, 199; *Horne* v. *Boston & Maine Railroad*, 62 N. H. 454.

The question of jurisdiction in this case is, therefore, simply whether a corporation existing under the laws of Massachusetts and New Hampshire, and which is a corporation in Massachusetts, can be treated in Massachusetts, for the purpose of giving jurisdiction to the United States Circuit Court for the District of that State, as *not* being a corporation of that State.

Stated in another form, the question is, Whether the shareholders of a corporation existing under the laws of two States, and having but one set of shareholders, can, for the purpose of giving jurisdiction to the Circuit Court for one of the States, be assumed to be *all citizens of the other State?* To state this question, is to answer it in the negative, and it is thus answered by all the decisions of this court. *Ohio & Mississippi Railroad* v. *Wheeler*, 1 Black, 286 (1861); *Railway Company* v. *Whitton*, 13 Wall. 270 (1874); *Muller* v. *Dows*, 94 U. S. 444 (1876); and *Memphis & Charleston Railroad* v. *Alabama*, 107 U. S. 581 (1882).

If a corporation existing under the laws of two States, and as much a citizen of one as of the other, is to be treated when sued either in the state court or in the Federal court of the State as a citizen of that State only on the ground that it cannot there be a corporation of any other State, then it necessarily follows that when such a corporation brings a suit, either in the state courts or in the Federal court of one of the States, it must in like manner be treated as a corporation of that State only, because it cannot *there* be a corporation of any other State. It is impossible to say that such a corporation cannot be sued in one of the States as a corporation of another State, and at the same time to say that it can sue in the State as a citizen of another State.

Under these decisions, it is clear that the Boston and Lowell Railroad Corporation, a citizen of Massachusetts, could not sue the Nashua and Lowell Railroad Corporation in the Circuit Court of the District of Massachusetts *as a citizen of New Hampshire;* and that if the Nashua and Lowell Railroad Corporation should sue the Boston and Lowell Railroad Corporation in the state court of Massachusetts, the suit could not be removed to the Circuit Court upon the ground that the Nashua and Lowell Company is a citizen of New Hampshire.

How, then, can the Nashua and Lowell Railroad Corporation maintain this suit as a citizen of New Hampshire, in the Circuit Court for the District of Massachusetts? If it is to be taken as a citizen of Massachusetts alone, in any suit which is brought against it in the State of Massachusetts, or in the Circuit Court for the District of Massachusetts, is it not equally to be taken as a citizen of Massachusetts alone, in any suit which it brings in either of those courts?

II. It cannot be assumed that the shareholders of the plaintiff are all citizens of New Hampshire. It has long been settled law that the jurisdiction of the Federal courts in suits by or against corporations, depended upon the citizenship of the shareholders of the corporation, who, in case of corporations, created by one State, are conclusively presumed to be all citizens of that State.

To say that a corporation is not a citizen, and therefore

cannot sue or be sued as such, and then to say that it is to be conclusively presumed that its members are citizens of the State by which it is created, and therefore it can be sued or sue as a citizen of that State, although its members are not in fact citizens of that State, is in effect to say that it may sue or be sued as a citizen of that State. As an original proposition it would seem that as the jurisdiction of the Federal courts in such cases depends upon the citizenship of the members of the corporation, that membership should be established as a matter of fact by the party invoking the jurisdiction of the court, and not by an absolute legal presumption, without reference to the fact.

But it is not necessary to discuss that question in this case, for, however proper it may be to absolutely presume that the members of a corporation created by one State are all citizens of that State, no such presumption can in the nature of things arise in the case of a corporation created by the concurrent legislation of two States, and having one franchise and one set of stockholders.

The fact that under the laws by which the plaintiff corporation was created its stockholders must be common stockholders in both States, necessarily prevents the presumption that they are citizens of one State only.

The Circuit Court could have jurisdiction of the cause of action in this suit only by reason of the citizenship of the parties ; and, unless it is to be conclusively presumed that all the shareholders of the plaintiff are citizens of New Hampshire, the court had no jurisdiction. How can it be conclusively presumed that the shareholders of a corporation existing under the legislation of two States, and who are in fact identical, are citizens of one State rather than of the other. See *Railroad Co.* v. *Vance,* 96 U. S. 450, 458; *Attorney General* v. *Petersburg Railroad,* 6 Iredell, 456; *Philadelphia & Baltimore Railroad* v. *Maryland,* 10 How. 376; *Railroad Co.* v. *Harris,* 12 Wall. 65, 82; *Wilmer* v. *Atlanta &c. Railroad,* 2 Woods, 447; *Burger* v. *Grand Rapids &c. Railroad,* 22 Fed. Rep. 561; *Copeland* v. *Memphis & Charleston Railroad,* 3 Woods, 651; *Railroad Co.* v. *Georgia,* 98 U. S.

359; *St. Louis &c. Railway Co.* v. *Berry,* 113 U. S. 465;
*Pullman Car Co.* v. *Missouri Pacific Railway,* 115 U. S. 587.

MR. JUSTICE FIELD delivered the opinion of the court.

This is a suit in equity to compel the defendant, the Boston
and Lowell Railroad Corporation, to account for various sums
of money alleged to have been received by it and used for its
benefit, to which the complainant was entitled, and also to
charge the defendant Hosford personally with the amount
diverted by him to that corporation. The controversy relates
to certain transactions growing out of a joint traffic contract
between the plaintiff and the defendant corporations.

The plaintiff, the Nashua and Lowell Railroad Corporation,
is alleged in the bill to have been duly established as a corpo-
ration under the laws of New Hampshire, and to be a citizen
of that State. It will be convenient hereafter in this opinion
to designate it as the Nashua Corporation. On the 1st of
February, 1857, it owned and operated a railroad extending
from Nashua, in New Hampshire, to Lowell, in Massachusetts,
a distance of thirteen miles, of which five miles were in New
Hampshire, and eight miles in Massachusetts. The suit was
brought not only against the Boston and Lowell Railroad
Corporation, alleged in the bill to be a corporation duly estab-
lished by the laws of Massachusetts and a citizen of that
State, but against Hocum Hosford, its treasurer, and Charles
E. A. Bartlett, of the city of Lowell, also citizens of that
State, but as to Bartlett it has been dismissed. On the 1st
of February, 1857, this corporation, which for convenience
we shall call the Lowell Corporation, owned and operated a
railroad extending from Boston to Lowell, Massachusetts, a
distance of twenty-six miles, with a branch to the town of
Woburn a mile and a half in length.

On the 1st of February, 1857, the two corporations entered
into a contract in writing with each other, "for the promotion
of their mutual interest through a more efficient and economi-
cal joint operation and management of their roads and for the
better security of their respective investments as well as for

the convenience and interest of the public," that their roads with their branches should " be worked and managed as one road," under certain conditions and stipulations which were stated at length. The contract recited that a large portion of the business of the two roads was joint business passing over the roads and through the branches of both parties, making desirable a common policy and unanimity of management, and that in the transaction of their business there was a mutual interest, both as to the mode of transaction and as to the tariff upon the same, as well as in all other matters relating thereto, and that the two corporations, by operating under a common management, would thereby be enabled to do business with greater facility, greater regularity, and at a greater saving of expense.

The Nashua Corporation had at this time leases of the Stony Brook Railroad, extending from its line at North Chelmsford to Groton Junction, about fourteen miles in Massachusetts, and of the Wilton Railroad extending from Nashua to Wilton, about thirteen miles in New Hampshire. The contract was originally for three years, but by a supplemental agreement of October 1, 1858, it was extended to twenty years. Among other things, it provided:

That the roads of the parties should be " operated and managed by one agent, to be chosen by the concurrent vote of a majority of the directors of each party, and who might be removed by a like vote or by the unanimous vote of either board;" and that the respective boards of directors should, " by such concurrent action, exercise the same control over the management as is usual with boards of railroad directors in ordinary cases."

That the corporations should each surrender to the joint management thus constituted " the entire control of their respective roads, shops, depots, furniture, machinery, tools, or other property necessary for the proper maintenance and working of the joint roads," reserving only certain specified property, necessary for the operation of the roads, consisting principally of real estate.

That the contracts of the Nashua Corporation with the

Wilton and Stony Brook roads should be assumed by the joint management and carried out; and that the contract with the Wilton road, which was to expire on the 1st of April, 1858, might be renewed during the continuance of the joint management.

That the Nashua Corporation should within the year 1857, at its own cost, erect a freight depot, with the necessary approaches and furniture, in the city of Lowell, upon its site at Western Avenue, which, during the continuance of the agreement, might be used for the accommodation of the joint business.

That the Lowell Corporation should complete within the year 1857, at its own separate cost, the new passenger depot at Causeway Street in Boston, then under construction, together with the tracks, bridges, and all necessary fixtures connected with the extension into that city, and at its separate expense make such alterations in the existing Boston passenger depot as had been designed by the Lowell Corporation for converting it into a freight depot; and also, without charge to the Nashua Corporation, complete at the earliest practicable time the crossing over the Fitchburg Railroad and the connection with the Grand Junction Railroad.

That the road-bed, bridges, superstructure, depots, buildings and fixtures of each road should be kept as near as might be in like relative repair from their then state and condition, and that all casualties and damages to the same, except fire risks on buildings, should be at the common risk, and charged in the current joint account, and in case of the destruction by fire of any buildings or injury to the same, that the owner should rebuild or replace them at his own cost.

That the income and expense accounts of the joint roads should be made up, as nearly as conveniently might be, by estimate to the close of each month, and the net balance should be divided and paid over, on account, to the respective treasurers of the two corporations, thirty-one per cent to the Nashua Corporation and sixty-nine per cent to the Lowell Corporation, subject to a final adjustment at the semi-annual closing of accounts; and that on the first days of April and

October in each year the said accounts should be accurately closed and balanced by settlement with each party covering and adjusting all previous payments on account, the Nashua Corporation receiving as its proportion thirty-one per cent of the said joint net income and the Lowell Corporation receiving as its proportion sixty-nine per cent thereof.

That each corporation might separately and on its own account declare such dividends upon its own stock, and payable from its own separate funds, as it might deem expedient, it being distinctly provided that "the interest upon the debts of either party must also be paid out of such separate share, and not from the common fund."

As thus seen, the contract provided that the two roads and their branches should be operated as a single road by a common agent to be appointed by the directors of both companies, and removable by them or by the unanimous action of either; that the roads and property of each party should be kept in a like relative condition and repair as they then were at their joint expense; that the Nashua Corporation should, in 1857, erect at its own expense a freight depot, with necessary approaches, in the city of Lowell, and the Lowell Corporation, in the same year, at its expense complete a passenger depot, with necessary approaches, in the city of Boston, and alter the existing passenger depot there, also, at its own expense into a freight depot; that the interest upon the debts contracted by either party should be paid out of its own share, and not from the common fund; and that the net income should be divided in the proportion of thirty-one per cent to the plaintiff, the Nashua Corporation, and of sixty-nine per cent to the defendant, the Lowell Corporation — payments on account of such division to be made upon monthly estimates, and final settlement and adjustment to be had semi-annually. The contract did not provide that the property of either corporation should be improved, or other property be acquired by either, at the joint expense of both.

Under this contract and during its continuance, the two corporations united their business and conducted it with marked success. By leases from other companies and the ac-

quisition of branch roads, a large mileage was added to their lines and a correspondingly increased business was transacted by them. In 1874, the Nashua Corporation reported to its stockholders that the two corporations then operated under their joint management one hundred and thirty-five miles, more than double the mileage at the time the contract was entered into. It is stated that thirty-three miles of this distance were added by the acquisition of the Salem and Lowell and the Lowell and Lawrence roads in 1858, and sixteen miles of it by the purchase of the Lexington and Arlington road in 1869. Contracts were made for business with connecting lines to such an extent that the two roads, during the late years of their joint operation, transported annually in the neighborhood of three hundred thousand tons of freight and two hundred thousand passengers. The net income resulting from this extended business was satisfactorily apportioned pursuant to the contract, thirty-one per cent going to the Nashua Corporation and sixty-nine per cent going to the Lowell Corporation, except as they were affected by two transactions of which the Nashua Corporation complains. One of these transactions was the alleged illegal appropriation by the Lowell Corporation of $181,962, for a passenger depot at Boston, erected by that corporation for its own benefit, and which complainant contends it was entitled to receive as its share of the net earnings of the joint management. The other transaction was the alleged illegal appropriation of $26,124, for interest on the amount expended by the Lowell Corporation in buying a controlling interest in the stock of two other railroad companies, the Lowell and Lawrence Company and the Salem and Lowell Company, which the complainant contends it was also entitled to receive as its share of the net earnings of the joint management. It is to compel an accounting for these sums and their payment to the complainant that the present suit is brought.

Before passing, however, upon the validity of these claims a question raised as to the jurisdiction of the Circuit Court must be considered. Its jurisdiction was assumed upon the diverse citizenship of the parties, and, upon the allegations of the bill, rightfully assumed. Although a corporation is not a

citizen of a State within the meaning of many provisions of the national Constitution; it is settled that where rights of property or of action are sought to be enforced, it will be treated as a citizen of the State where created, within the clause extending the judicial power of the United States to controversies between citizens of different States. The plaintiff was created a corporation by the legislature of New Hampshire in June, 1835. It is therefore to be treated as a citizen of that State. *Railway Co.* v. *Whitton,* 13 Wall. 270, 283.

But it also appears that in April, 1836, the legislature of Massachusetts constituted the same persons a corporation of that State, who had been thus incorporated in New Hampshire, giving to them the same name and authorizing the new corporation to build that portion of the railroad between Nashua in New Hampshire and Lowell in Massachusetts lying within the latter State.

It also appears that in April, 1838, the legislature of Massachusetts passed an act to unite the two corporations — the one created by New Hampshire and the one created by Massachusetts — the first section of which was as follows:

"The stockholders of the Nashua and Lowell Railroad Corporation, incorporated by the legislature of the State of New Hampshire in the year one thousand eight hundred and thirty-five, are hereby constituted stockholders of the Nashua and Lowell Railroad Corporation, incorporated by the legislature of this Commonwealth in the year one thousand eight hundred and thirty-six; and the said two corporations are hereby united into one corporation by the name of the Nashua and Lowell Railroad Corporation; and all the tolls, franchises, rights, powers, privileges and property granted, or to be granted, acquired or to be acquired, under the authority of the said States, shall be held and enjoyed by all the said stockholders in proportion to their number of shares in either or both of said corporations."

There were other provisions designed to enable the two corporations to conduct their business as one corporation. The act, however, declared that it should not take effect until the

legislature of New Hampshire had passed a similar act uniting the said stockholders into one corporation, nor until the acts had been accepted by the stockholders at a meeting called for that purpose.

In June of the same year, 1838, the legislature of New Hampshire passed an act authorizing the two corporations to unite, and providing in such case that "all the tolls, franchises, rights, powers, privileges and property" of the two corporations should be held and enjoyed by the stockholders in each and both in proportion to their number of shares therein, and that all property owned, acquired or enjoyed by either of the corporations should be taken and accounted to be the joint property of the stockholders of the two corporations, and that the two corporations should be one — the act to be in force when accepted by the stockholders of the corporations at a meeting called for that purpose.

It does not appear, so far as disclosed by the record, except in the allegations of the defendant, that there was any formal acceptance of this act by the stockholders of the two corporations; but it would seem that the corporations acted upon its supposed acceptance, for the defendants pleaded to the jurisdiction of the court on the ground that, by the legislation mentioned, the complainant was not a corporation of New Hampshire, and consequently a citizen of that State, but was a corporation of Massachusetts, and thus a citizen of that State.

In the bill as originally filed, the Nashua Corporation was the only complainant. By a subsequent amendment three persons, citizens of New Hampshire, stockholders of that corporation, were united as complainants. To the bill, as thus amended, the defendants pleaded as follows: "That this court ought not to take further cognizance of or sustain the said bill of complaint, because they say that they, the said defendants, at the time of filing said bill, were, and still are all, each and every one citizens of the State of Massachusetts, and that said plaintiffs, at the time of filing said bill, were not, and still are not all, each and every one citizens of another State, but that the said Nashua and Lowell Railroad Corporation, one of said

plaintiffs, at the time of filing said bill, was, and still is, a corporation duly established and existing under and by virtue of the laws of the State of Massachusetts, and a citizen of said State of Massachusetts, and, at the time of filing said bill, was not, and still is not, a corporation established and existing by the laws of the State of New Hampshire, and a citizen of said State of New Hampshire. All of which matters and things these defendants do aver to be true, and are ready to verify. Wherefore they plead the same to the whole of said amended bill, and pray the judgment of this honorable court whether they should be compelled to make any other or further answer to said bill." This plea was argued upon an agreement as to the facts.

This plea was overruled, the court stating in its opinion that it seemed "that the defendant corporation might go into New Hampshire and there sue the plaintiff, as a New Hampshire corporation, in the Federal court, although it could not bring such suit in the district of Massachusetts against the New Hampshire corporation, because no service upon the New Hampshire corporation as such could be got in this district, if for no other reason," and adding that "if the defendant could sue the plaintiff in the Federal court for New Hampshire, notwithstanding the fact of the plaintiff being chartered under the laws of both States, there would seem to be no good reason why the plaintiff, claiming under its New Hampshire charter, should not be allowed to sue the defendant in the Federal court for Massachusetts, as it would be impossible for the defendant in such case to deny the title of the plaintiff as predicated upon the New Hampshire charter, or to deprive the plaintiff of the benefit of its New Hampshire citizenship thus acquired." 8 Fed. Rep. 458.

A more satisfactory answer would, perhaps, have been, that whatever effect may be attributed to the legislation of Massachusetts in creating a new corporation by the same name with that of the complainant, or in allowing a union of its business and property with that of the complainant, it did not change the existence of the complainant as a corporation of New Hampshire, nor its character as a citizen of that

State, for the enforcement of its rights of action in the national courts against citizens of other States. Indeed, no other State could by its legislation change this character of that corporation, however great the rights and privileges bestowed upon it. The new corporation created by Massachusetts, though bearing the same name, composed of the same stockholders and designed to accomplish the same purposes, is not the same corporation with the one in New Hampshire. Identity of name, powers and purposes does not create an identity of origin or existence, any more than any other statutes, alike in language, passed by different legislative bodies, can properly be said to owe their existence to both. To each statute and to the corporation created by it there can be but one legislative paternity.

But on this point we will hereafter speak more at large. At present it is sufficient to say that the decision of the court overruling the plea in abatement upon the facts agreed upon disposed of the question of jurisdiction in the court below. It is true the defendants, in their answers, subsequently filed, also made the same objection. Formerly the objection to the jurisdiction, from a denial of the complainant's averment of citizenship, could only be raised by a plea in abatement or by demurrer, and not by answer. *De Sobry* v. *Nicholson,* 3 Wall. 420, 423; *Sheppard* v. *Graves,* 14 How. 504, 509; *Wickliffe* v. *Owings,* 17 How. 47. This rule is modified by the act of March 3, 1875, determining the jurisdiction of the Circuit Courts of the United States. 18 Stat. 472. That statute provides that if in any suit commenced in one of such courts " it shall appear to the satisfaction of said Circuit Court, at any time after such suit has been brought or removed thereto, that such suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of said Circuit Court, or that the parties to said suit have been improperly or collusively made or joined, either as plaintiffs or defendants, for the purpose of creating a case cognizable or removable under this act, the said Circuit Court shall proceed no further therein, but shall dismiss the suit or remand it to the court from which it was removed, as justice may

require, and shall make such order as to costs as shall be just."

By this statute the time at which such objection may be raised is not thus restricted, but it may be taken at any time after suit brought in the cases mentioned. The principal object of the statute was to relieve the national courts from the necessity of passing upon cases where it was plain that no question was involved within their jurisdiction, and thus free them from a consideration of controversies of a frivolous and questionable character, and to prevent fraudulent and collusive attempts to invoke the jurisdiction of those courts, as had frequently been the practice, by colorable transfers of property or choses in action from a citizen of one State to a citizen of another, to enable the latter to go into those courts, the original owner still retaining an interest in the property or choses in action transferred, or taking a contract for a retransfer of the same to himself after the termination of the litigation. In such cases it is undoubtedly the duty of the court below, of its own motion, to deny its jurisdiction, and of this court, on appeal or writ of error, to see that that jurisdiction has in no respect been thus imposed upon. *Morris* v. *Gilman*, 129 U. S. 315, 326; *Farmington* v. *Pillsbury*, 114 U. S. 138, 143.

If the question of jurisdiction could be raised in the answers of the defendants after the decision upon the issue on the plea in abatement, notwithstanding the decisions cited and the 39th Equity Rule of this court, the result in this case, though not perhaps in all cases, would be the same. Replications were duly filed to the answers, the effect of which was to deny the allegations respecting the acceptance of the acts having for their object the union of the two corporations, and those allegations were entirely unsupported by the evidence or by anything in the record; and neither in the final decree of the court, nor in its opinion, was any allusion made to the subject. The only evidence bearing upon the question is found in the legislation of the two States, New Hampshire and Massachusetts, and it is plain, as already stated, that no legislation of Massachusetts could possibly affect the existence of the complainant as a corporation of New Hampshire, or its character as a citi-

zen of that State.    The act of New Hampshire of 1838, whilst
in terms authorizing the two corporations to unite, did not
confer any new franchise or right upon either of them.    All
that it did was to permit the funding or conversion of the sep-
arate interests of each stockholder in each corporation, into a
common or joint or undivided interest in both; and to declare
that after the two corporations were united all property owned
by either should be considered the joint property of the stock-
holders of both.    There is nothing in these provisions looking
to any abandonment of its corporate character as a creation
of New Hampshire or its citizenship of that State.

There are many decisions both of the Federal and state
courts which establish the rule that however closely two cor-
porations of different States may unite their interests, and
though even the stockholders of the one may become the
stockholders of the other and their business be conducted by
the same directors, the separate identity of each, as a corpo-
ration of the State by which it was created, and as a citizen of
that State, is not thereby lost.

In *Farnum* v. *Blackstone Canal Co.*, 1 Sumner, 46, we
have an instance of this kind.    It there appeared that in
January, 1823, the legislature of Massachusetts created a
corporation by the name of the Blackstone Canal Company,
for the purpose of constructing a certain canal in that State.
It also appeared that in June of that year the legislature of
Rhode Island incorporated a company by the same name,
the Blackstone Canal Company, and authorized it to con-
struct a certain canal within the limits of that State.    In
May, 1827, the legislature of Rhode Island declared that the
stockholders of the Massachusetts Company should be stock-
holders in the Rhode Island Company as if they had origi-
nally subscribed thereto, if both corporations should agree
thereto, and that the books and proceedings of the original
and associated stockholders should be deemed the books of
both.    And the court held that, though the two corporations
were created in adjacent States by the same name, to con-
struct a canal in each of the States, respectively, and after-
wards by subsequent acts were permitted to unite their inter-

ests, their separate corporate existence was not merged, and that the legislature only created a unity of stock and interest. In giving its decision the court, by Mr. Justice Story, said : "Although in virtue of these several acts, the corporations," (one of Rhode Island and one of Massachusetts,) "acquired a unity of interests, it by no means follows that they ceased to exist as distinct and different corporations. Their powers, their rights, their privileges, their duties, remained distinct and several, as before, according to their respective acts of incorporation. Neither could exercise the rights, powers or privileges conferred on the other. There was no corporate identity. Neither was merged in the other. If it were otherwise, which became merged? The acts of incorporation create no merger, and neither is pointed out as survivor or successor. We must treat the case, then, as one of distinct corporations, acting within the sphere of their respective charters for purposes of common interest, and not as a case where all the powers of both were concentrated in one. The union was of interests and stocks, and not a surrender of personal identity or corporate existence by either corporation."

In *Muller* v. *Dows*, 94 U. S. 444, 447, the bill averred that of the three complainants two were citizens and residents of the State of New York and one a citizen and resident of the State of Missouri. The two original defendants were corporations, namely, the Chicago and Southwestern Railway Company and the Chicago, Rock Island and Pacific Railroad Company, and they were alleged to be citizens of the State of Iowa. It was contended that the Chicago and Southwestern Railway Company could not claim to be a corporation created by the laws of Iowa, because it was formed by a consolidation of the Iowa company with another of the same name chartered by the laws of Missouri, the consolidation having been allowed by the statutes of each State. Hence it was argued that the corporation was created by the laws of Iowa and of Missouri, and, as one of the plaintiffs was a citizen of Missouri, it was urged that the Circuit Court had no jurisdiction. But the court replied, speaking by Mr. Justice Strong : "We cannot assent to this inference. It is true the provisions of the stat-

utes of Iowa, respecting railroad consolidation of roads within the State with others outside of the State, were that any railroad company organized under the laws of the State, or that might thus be organized, should have power to intersect, join and unite their railroads constructed or to be constructed in the State, or in any adjoining State, at such point on the state line, or at any other point, as might be mutually agreed upon by said companies, and such railroads were authorized 'to merge and consolidate the stock of the respective companies, making one joint stock company of the railroads thus connected.' The Missouri statutes contained similar provisions; and with these laws in force the consolidation of the Chicago and Southwestern Railways was effected. The two companies became one. But in the State of Iowa that one was an Iowa corporation, existing under the laws of that State alone. The laws of Missouri had no operation in Iowa."

The case of *The St. Louis, Alton & Terre Haute Railroad Company* v. *The Indianapolis & St. Louis Railroad Company*, which was before the Circuit Court of the United States for the District of Indiana, and is reported in 9 Bissell, 144, and which came before this court under the title of *The Pennsylvania Railroad Company* v. *The St. Louis, Alton & Terre Haute Railroad Company*, and is reported in 118 U. S. 290, bears a strong resemblance to the one now before the court. In the bill the plaintiff was alleged to be a corporation created under the laws of Illinois and the defendants were alleged to be corporations created under the laws of Indiana and of Pennsylvania. To the bill a plea was interposed in which it was alleged that under various acts of the legislatures of Illinois and Indiana two corporations were created, one the plaintiff, *The St. Louis, Alton & Terre Haute Railroad Company*, and the other the same company in name in Indiana; that they had been consolidated by those States, and were so inseparably connected together that the plaintiff was really a corporation as well of Indiana as of Illinois; and that, as some of the defendants were corporations of the State of Indiana the court could not take jurisdiction of the case. But the court held that the fact that the two corporations created by

different States had been consolidated under the laws of those States, and that the railroad was operated by virtue of that consolidation as one entire line of road, did not prevent one of those corporations from bringing suit in the Federal court as a corporation of the State where it was created, against the corporation with which it was consolidated, which was created by the other State. Said the court, speaking by Judge Drummond: "If the defendant corporation, though consolidated with another of a different State, can be sued in the Federal court in the State of its creation, as a citizen thereof," (referring to the cases of *Railway Co.* v. *Whitton*, 13 Wall. 270, and *Muller* v. *Dows*, 94 U. S. 444,) "why can it not sue as a citizen of the State which created it? I can see no difference in principle. It seems to me that when the plaintiff comes into the Federal court, if a corporation of another State, it is clothed with all the attributes of citizenship which the laws of that State confer, and the shareholders of that corporation must be conclusively regarded as citizens of the State which creates the corporation, precisely the same as if it were a defendant. So I do not see why, if the plaintiff in this case alleges, as it does, that it is a corporation created by the laws of Illinois, it cannot institute a suit in the Circuit Court of the United States of Indiana against a corporation of that State."

The case turned upon the point whether the plaintiff corporation of Illinois had become also an Indiana corporation so as to lose its existence or identity and citizenship as an Illinois corporation. The court held in the negative, that it still remained an Illinois corporation, with all its rights of action as such in the United States courts.

When the case came to this court the decision of the court below was affirmed, but it would seem that when it was considered here the plea to the jurisdiction filed in the court below had been withdrawn. The question of jurisdiction was, however, examined by the court of its own motion. "It does not seem," said the court, "to admit of question that a corporation of one State owning property and doing business in another State by the permission of the latter, does not thereby become a citizen of this State also. And so a corporation of

Illinois, authorized by its laws to build a railroad across the State from the Mississippi River to its eastern boundary may, by the permission of the State of Indiana, extend its road a few miles within the limits of the latter, or, indeed, through the entire State, and may use and operate the line as one road by the permission of the State, without thereby becoming a corporation or a citizen of the State of Indiana. Nor does it seem to us that an act of the legislature conferring upon this corporation of Illinois, by its Illinois corporate name, such powers to enable it to use and control that part of the road within the State of Indiana, as have been conferred upon it by the State which created it, constitutes it a corporation of Indiana." pp. 295, 296. And again: "In a case where the corporation already exists, even if adopted by the law of another State and invested with full corporate powers, it does not thereby become such new corporation of another State, until it does some act which signifies its acceptance of this legislation and its purpose to be governed by it. We think what has occurred between the State of Indiana and this Illinois corporation falls short of this." p. 296.

Many cases might be cited from the state courts illustrative and confirmatory of the doctrine of this case. In *Racine & Mississippi Railroad Co.* v. *Farmers' Loan & Trust Co.*, 49 Illinois, 331, it appeared that in April, 1852, the legislature of Wisconsin incorporated the Racine, Janesville and Mississippi Railroad Company, and that the legislature of Illinois, in February, 1853, incorporated the Rockton and Freeport Railroad Company, both companies authorized to construct railways; that in February, 1854, these two companies entered into an agreement to fully merge and consolidate their capital stock, powers, privileges, immunities and franchises. In February, 1855, both the legislature of Illinois and the legislature of Wisconsin changed the name of these two companies to that of the Racine and Mississippi Railroad Company. It also appeared that in 1851 the Savannah Branch Railroad Company was organized under the general railroad law of Illinois, and that in January, 1856, this company entered into articles of agreement with the Racine and Mississippi Railroad Company, by

which its stock was consolidated with that of the latter company; that a majority in interest of the stockholders of the Savannah Company ratified the articles; and that in 1857 the legislature of Illinois changed the name of that company to the Racine and Mississippi Railroad Company. Thus the names of three railroad companies, created by three different States, were changed to the same name, and were allowed to be consolidated together and act as one company. The Supreme Court of Illinois held that this consolidation did not convert them into one company in fact. Said the court: "Our view of the effect of the consolidation between the Rockton Company (of Illinois) and the Wisconsin Company, which we hold to have been legally made, is briefly this: While it created a community of stock and of interest between the two companies, it did not convert them into one company, in the same way and to the same degree that might follow a consolidation of two companies within the same State. Neither Illinois nor Wisconsin, in authorizing the consolidation, can have intended to abandon all jurisdiction over its own corporation created by itself. Indeed, neither State could take jurisdiction over the property or proceedings of the corporation beyond its own limits, and as is said by the court in *Ohio & Mississippi Railroad* v. *Wheeler*, 1 Black, 286, 297, a corporation 'can have no existence beyond the limits of the State or sovereignty which brings it into life and endows it with its faculties and powers.'"

In *Quincy Railroad Bridge Co.* v. *Adams Co.*, 88 Illinois, 615, 619, the plaintiff was a consolidated corporation, so called, created by the laws of Illinois and Missouri for bridging the Mississippi River between those States. The plaintiff, a bridge company, to avoid taxation in Illinois, claimed to be a corporation of both States, and not of either alone. The court in its opinion said: "It is said by appellants, that this corporation, although it derived some of its powers, and in part its corporate existence, from this State, (Illinois,) derived an equal part from the sovereign State of Missouri, and, therefore, they are not a corporation created under the laws of either State. To this it is answered, and we think satisfactorily, that the legislatures of this State and of Missouri cannot act jointly, nor

can any legislation of the last-named State have the least effect in creating a corporation in this State. Hence the corporate existence of appellants, considered as a corporation of this State, must spring from the legislation of the State which by its own vigor performs the act. The States of Illinois and Missouri have no power to unite in passing any legislative act. It is impossible, in the very nature of their organizations, that they can do so. They cannot so fuse themselves into a single sovereignty, and as such create a body politic which shall be a corporation of the two States without being a corporation of each State or of either State."

In *Chicago & Northwestern Railroad* v. *The Auditor General*, 53 Michigan, 91, it appeared that the general railroad law of Michigan made roads that lie partly within and partly without the State, taxable on so much of their gross receipts as corresponded to the ratio of their local to their entire length. A local company was consolidated with a foreign one that controlled a number of other consolidated roads and several leased lines besides, and in considering the effect of the consolidation the court said, speaking by Chief Justice Cooley: "It is familiar law that each corporation has its existence and domicil, so far as the term can be applicable to the artificial person, within the territory of the sovereign creating it; it comes into existence there by an exercise of sovereign will, and though it may be allowed to exercise corporate functions within another sovereignty, it is impossible to conceive of one joint act, performed simultaneously by two sovereign States which shall bring a single corporation into being, except it be by compact or treaty. There may be separate consent given for the consolidation of corporations separately created; but when the two unite they severally bring to the new entity the powers and privileges already possessed, and the consolidated company simply exercises in each jurisdiction the powers the corporation there chartered had possessed, and succeeds there to its privileges."

It would seem clear, from the decisions we have cited, as well as on general principles, that the plaintiff in this case must be considered simply in its character as a corporation

created by the laws of New Hampshire, and as such a citizen of that State, and so entitled to go into the Circuit Court of the United States and bring its bill against a citizen of any other State; and that its union or consolidation with another corporation of the same name organized under the laws of Massachusetts, did not extinguish or modify its character as a citizen of New Hampshire, or give it any such additional citizenship in Massachusetts as to defeat its right to go into the Circuit Court of the United States in that district.

If the position taken by the defendants could be maintained then they could sue in the Federal court in New Hampshire the New Hampshire corporation, whilst that corporation could not enforce its claims in the Federal court in Massachusetts against the Massachusetts corporation. From the cases we have cited, it is evident that by the general law railroad corporations created by two or more States, though joined in their interests, in the operation of their roads, in the issue of their stock, and in the division of their profits, so as practically to be a single corporation, do not lose their identity; and that each one has its existence and its standing in the courts of the country, only by virtue of the legislation of the State by which it is created. The union of name, of officers, of business and of property does not change their distinctive character as separate corporations.

We turn now to a consideration of the claims put forth by the plaintiff for a restoration to it of moneys appropriated to the use and for the benefit of the defendant corporation. As seen by the provisions of the joint traffic contract given above, the Lowell Corporation was to complete the construction of a passenger station, with all necessary approaches, in the city of Boston in 1857, at its own expense, and to alter the passenger depot then existing there into a freight depot also at its own expense; and the Nashua Corporation was, at its own expense, to erect a freight depot at the city of Lowell for the accommodation of the joint business; and in case of destruction of buildings belonging to either party, or damage to them by fire, they were to be rebuilt or replaced by the owner. As observed by counsel, it would appear that when

entered into it was not the intent of the contract that either party should be charged for improvements, additions or even restorations, in the real estate or terminal facilities of the other.   But with the increase of business under the joint management, it became evident, if the business was to be retained, that larger terminal facilities at Boston were necessary ; and the character and extent of the needed improvements were the subject of frequent consideration among the directors of the two companies.   In the meantime the construction of another passenger station there was commenced by the Lowell Company.   And at a meeting of the directors of the Nashua Corporation on the 23d of July, 1872, it was voted as follows : "That the expenditures made and to be made by the Boston and Lowell Railroad Corporation for land and building in Boston for a new station, and the expenditures made and to be made by said corporation for the building and completing the Mystic River Railroad, and for the improvements in Winchester for a new station and land for railway purposes, to the amount of $20,000, are to be treated in the management of the business under the joint business contract existing between said corporation and the Nashua and Lowell Railroad Corporation as follows, viz.: The said Boston and Lowell Railroad Corporation are to be paid the interest upon such expenditures made and to be made, at the rate of seven per cent per annum, at the end of each six months, out of the receipts of the joint corporations under said contract, and which is to be charged as a part of the expenses of operating said railways under said contract ; and the cashier of said two corporations and treasurer of the Boston and Lowell Railroad Corporation is hereby directed to make up an interest account upon such expenditures to April 1, 1872, and pay the amount found due to the Boston and Lowell Railroad Corporation out of the joint receipts of said two corporations."

Under the authority of this vote there was deducted from the net earnings of the joint management the interest on the expenditures incurred in the construction of the passenger station in the city of Boston, at the rate of seven per cent,

the same being treated as operating expenses of the road.
The amount of the net earnings thus diverted from the Nashua
Company, being thirty-one per cent of the interest on the
whole expenditure incurred, is alleged to have been $181,962,
and the right to thus appropriate those earnings depends upon
the sufficiency of that authority. The question thus pre-
sented is not free from difficulty. As a general rule, we
should not hesitate to say that the directors of the Nashua
Company could not authorize, without the previous approval
of its stockholders, the construction of a passenger station at
a city in a State foreign to that in which it was created, and
to which its own road did not extend, or the payment of any
portion of the cost of the construction. Such expenditures
would not be considered as falling within the ordinary scope
of their powers. See *Railway Co.* v. *Allerton*, 18 Wall.
233; *Davis* v. *Old Colony Railroad*, 131 Mass. 258, and cases
there cited, particularly *Colman* v. *Eastern Counties Railway*,
10 Beavan, 1, and *Bagshaw* v. *Eastern Union Railway*, 7 Hare,
114. But the fact that the increased facilities provided at
Boston were necessary to enable the joint management to
retain its extended business, in which the Nashua Company
was of course directly interested, changes the position of the
directors of that company with reference to such expendi-
tures, and brings them within the general scope of the direc-
tors' powers. Such is the conclusion of a majority of the
court, and, therefore, the suit cannot be maintained for the
restoration to the complainant of moneys thus expended,
which otherwise would have gone to it as net earnings of the
joint management.

But the purchase of the controlling interest in the stock of
the Lowell and Lawrence and of the Salem and Lowell Rail-
road Companies stands upon a different footing. That was a
matter solely for the Lowell Corporation. The purchase was
never authorized by any vote of the directors of the Nashua
Company. At the time those roads were under lease to the
Lowell Corporation, and had been taken into the joint account
and the net earnings divided between the two corporations
in the same ratio as were the earnings of their own roads.

This gave to the Nashua Corporation all the benefits that could possibly arise from the ownership by the Lowell Corporation of a controlling interest in their capital stock. The additional burden of the purchase could in no way, therefore, be cast upon the Nashua Corporation without the consent of its stockholders, and no such consent was given either by them, nor, as already said, was any given by its directors. The pretence for the purchase was that the leases were invalid, and that other parties might otherwise obtain control of those roads, and thus injuriously affect the business of the joint management. The charter of the complainant did not extend to the purchase of controlling interests in the railroads of other States under the apprehension that such roads might become business competitors. The complainant is, therefore, entitled to an accounting by the Lowell Company for the net earnings of the joint management which were appropriated towards the interest on the sums expended in the purchase of the stock of those companies, and to the payment of the amount found due to it upon such accounting.

The decree of the court below will be reversed and the cause remanded for further proceedings in accordance with this opinion; and

*It is so ordered.*

MR. CHIEF JUSTICE FULLER, MR. JUSTICE GRAY and MR. JUSTICE LAMAR dissented on the question of jurisdiction.

MR. JUSTICE BLATCHFORD did not sit in this case, or take any part in its decision.