(C. D. 294)

W. Y. MOBERLY *v.* UNITED STATES

United States Customs Court, Third Division

(Decided March 7, 1940)

Charles A. Darius (Robert W. Eiler and Harry M. Farrell of counsel) for the plaintiff.

Webster J. Oliver, Assistant Attorney General (Richard H. Welsh, Joseph F. Donohue, special attorneys, and Frank X. O'Donnell, Jr., junior attorney), for the defendant.

Before CLINE, EVANS, and KEEFE, Judges; EVANS, J., concurring in the result

KEEFE, Judge: The importer here seeks to recover money paid for duties on certain oil well casings imported from Canada in 1933 through the port of Sweet Grass, Mont. The merchandise was assessed for duty by the collector at three-fourths of 1 cent per pound under paragraph 328, Tariff Act of 1930. The importer claims that the casings were previously exported from the United States in 1929 and are therefore entitled to free entry as American goods returned, under paragraph 1615. The collector answered the protest of the importer by stating that he was unable to determine whether the merchandise exported was identical with the imported casings and also whether the exporter and the importer were the same.

The record shows that the regulations attending the free entry of American goods returned were complied with. Two affidavits for free entry of returned American products were filed with the collector at Sweet Grass. One was filed by W. Y. Moberly, the authorized agent of the National Supply Co., Midwest, the importer herein, stating that 62 pieces of 7-inch O. D. seamless steel casing, 44,833 pounds, and 40 pieces of 7-inch O. D. seamless steel casing, 26,359 pounds, were bona fide manufactures of the United States that were shipped therefrom about March 16 and June 10, 1929, by the United States Steel Products Co. for the account of the National Supply Co. of Pittsburgh, Pa., to the Hudson Bay Marland Oil Co., Ltd., of Lomond, Alberta, Canada, and that they were returned to the National Supply Co., Midwest, of Kevin, Mont., for the account of the National Supply Co. of Pennsylvania. The other affidavit described 62 pieces National seamless D. B. X. casing T & C 6⅝″ x 24 pounds, 44,833 pounds, and 40 pieces of the same casing 6⅝″ x 24 pounds,

26,359 pounds, as being shipped by the United States Steel Products Co. for the account of the National Supply Co. of Pennsylvania to the Hudson Bay Marland Oil Co., Ltd., and returned to the National Supply Co. of Kevin, Mont., for the account of the National Supply Co. of Pittsburgh, Pa. Further information was given that the 62 pieces and the 40 pieces were exported via Portal, N. Dak., about March 13, 1929, and June 10, 1929. The latter affidavit was signed by W. F. Muller of the United States Steel Products Co.

It is the plaintiff's claim that the merchandise in question was exported from the United States by the National Tube Co. for the account of the United States Supply Co., a corporation organized under the laws of the State of Pennsylvania, and it was returned to the United States by the National Supply Co., Ltd., of Canada to the National Supply Co., Midwest, a corporation organized under the laws of Delaware. It will thus be seen that there are two questions involved herein and we will first take up for decision whether or not the merchandise imported at Sweet Grass, Mont., in 1933 was identical with the casing exported by the National Tube Co. for the account of the. National Supply Co.

In support of the claim that it is identical merchandise which had been exported and later imported, the importer presented as a witness one L. G. Schoenberger, who testified that he was in charge of the general order department of the National Supply Co. of Pa.; that he made quotations, entered all orders for the various National Supply companies, and fixed prices on old or obsolete stock, and kept track of stocks of pipe and casings and other materials located in various parts of the country and in Canada; that in 1929 he received two orders for casings from the National Supply Co., Ltd., one for 62 pieces and another for 52 pieces of 6⅝-inch x 24 pounds, D. B. X. seamless casing, for delivery to the Hudson Bay Marland Co., Ltd.; and that this particular brand of casing was manufactured by the National Tube Co., and that there was no difference between 6⅝-inch and 7-inch O. D. casing, the former referring to the inside diameter while the latter is the outside dimensions. He further testified that the merchandise was manufactured by the National Tube Co. of Pa. pursuant to an order he had placed with the United States Steel Products Co. of New York, and that the National Tube Co. manufactured and shipped the same in 1929 to the Hudson Bay Marland Oil Co., Ltd., for the account of his company. His statements were supported by two bills admitted in evidence showing that the United States Steel Products Co. of New York sold to the National Supply Co. of Pittsburgh, oil well casing of the identical number of pieces, size, and type. That the casing was shipped from McKeesport, Pa., to the Hudson Bay Marland Oil Co., Ltd., of Lomond, Canada, on two different

occasions during 1929, to wit, on March 13, 1929, 582 pieces of pipe and casing, including 62 pieces of 6⅝-inch by 24 pounds of National Seamless D. B. X. casing was shipped to said Canadian oil co., and on June 10, 1929, 52 pieces of the same type and kind of casing were also shipped to the same consignee. The witness further testified that the Hudson Bay Marland Oil Co. decided that it could not use the casing and asked the National Supply Co., Ltd., for credit and the right to return it, which was granted. Thereafter, the casing was placed in stock at Okotoks, Canada, where it remained until 1933; that in 1933, the witness received a rush order for 6⅝-inch casing from the National Supply Co., Midwest, and he wired the branch store at Calgary to have the material they had in stock at Okotoks shipped to that corporation to fill the order; and that the merchandise in question, which was shipped to the National Supply Co., Midwest, was the identical merchandise shipped to Canada by the National Tube Co. for the account of the National Supply Co. of Pa.

From the foregoing testimony and a consideration of the record we are of the opinion that it has been conclusively established that the casing exported upon March 13, 1929, and June 10, 1929, was identical with the merchandise imported from Canada on June 24, 1933, through the port of Sweet Grass, Mont.

Having found that the merchandise exported is identical with the imported merchandise, we will now proceed to determine whether or not the exporter of the merchandise was the importer thereof. It will be noted that the merchandise was exported by the National Tube Co. for the account of the National Supply Co., a Pennsylvania corporation. It was imported directly to the National Supply Co., Midwest, a Delaware Corporation doing business in Montana. Charles W. Meyer, the secretary-treasurer of the National Supply companies, testified relative to the corporate affiliation of the several National Supply companies. According to this witness, the National Supply Co. of Pa. is the parent corporation. The National Supply Co. of Del. was the holding company, owning all the stock of the 13 subsidiary companies, including the National Supply Co. of Pa., the National Supply Co., Midwest, and the National Supply Co., Ltd. The three subsidiaries were engaged in the same business, all advertising as the National Supply companies and having the same president and secretary-treasurer. The directorates in the companies were interlocking.

A corporation created by one state, though bearing the same name, composed of the same stockholders, and designed to accomplish the same purpose, is not the same corporation with one created by another state. The identity of name, powers, and purposes does not create an identity of origin or existence. To a corporation created by a state statute, there can be but one legislative paternity. The

Supreme Court in *Nashua & Lowell R. Corporation* v. *Boston & Lowell R. Corporation*, 136 U. S. 356, at page 375 stated:

There are many decisions both of the federal and state courts which establish the rule that however closely two corporations of different States may unite their interests, and though even the stockholders of the one may become the stockholders of the other and their business be conducted by the same directors, the separate identity of each as a corporation of the State by which it was created, and as a citizen of that State, is not thereby lost.

It is clear from the evidence before us that there was a community of stock and of interest between the three National Supply companies involved in this transaction. The National Supply Co. of Pa. approved all orders for merchandise sold by the other companies. They were not, however, one company, nor did their methods of doing business convert them into a single entity. When the casing in question was shipped from the United States by order of the National Supply Co. of Pa., such company became the *bona fide* shippers. The National Supply Co., Midwest, a corporation separate and apart from the Pennsylvania concern, received an order for casing. In an endeavor to fill the same that company forwarded the order to the Pennsylvania concern which recommended that it be shipped from the stock held by the Canadian concern. The casing was accordingly shipped to the National Supply Co., Midwest, and this company became the *bona fide* importers thereof. Inasmuch as the various National Supply companies were separate and distinct entities, and each under the law is entitled to all the rights and privileges of a person to do business and carry on the affairs, the same as a natural person, each corporation thereby becomes a person having privileges to export and import merchandise, and the right of each corporation to do so is separate and distinct from the right of any of their affiliates. Therefore, when an article is exported by one corporation and imported by another, even though both bear the same name and have a community of interest, the exporter of merchandise is not the importer thereof, unless there has been a merger of the corporations into one company.

Judgment will therefore be entered in favor of the defendant.

EVANS, J.: I concur in the result.