No. 13.—THE FRANKLIN BRIDGE COMPANY, plaintiffs in error *vs.* YOUNG WOOD, defendant.

[1.] In England, Corporations are created, and exist by prescription by Royal Charter, and by Act of Parliament. In this country, they are created by authority of the Legislature, and not otherwise.

[2.] The Legislative power is vested under our Constitution, in the General Assembly, which consists of a Senate and House of Representatives, elected at stated intervals, by the citizens of the respective counties.

[3.] Can the Legislature transfer the law-making power to any other body— *Query ?*

[4.] In England, although the contrary doctrine was formerly asserted to be the Law, it is now well settled 'that the King may delegate to others the power of establishing corporations; and the same principle has been recognized by the Courts, both of Pennsylvania and Missouri.

[5.] The Act of 1843 and of 1845, amendatory thereof, pointing out the manner of creating certain corporations, and defining their rights, powers, privileges and liabilities, are constitutional; and the charters established under them, and in conformity with their provisions, are legal and valid.

Assumpsit in Heard Superior Court. Tried before Judge HILL, May Term, 1853.

The Franklin Bridge Company was incorporated under the Act of the Legislature of 1843, to prescribe the mode of incorporating companies for certain purposes, by an order of the Inferior Court of Heard county.

The Company sued the defendant, Wood, for his subscription to their stock.

The defendant pleaded that the Company was not legally incorporated ; contending that the Act of the Legislature, referred to, was unconstitutional and void.

Upon argument, the Court held that the Act aforesaid, was unconstitutional, and non-suited the plaintiffs.

To this decision plaintiff excepted.

MABRY, for plaintiff in error.

FEATHERSTON, for defendant.

*By the Court.*—LUMPKIN, J. delivering the opinion.

Is the act of 1843, and that of 1845, amendatory thereof, pointing out the manner of creating certain corporations and defining their rights, privileges and liabilities, unconstitutional ?

By the first section of the act of 1843, it is provided "That when the persons interested, shall desire to have any church, camp ground, manufacturing company, trading company, ice company, fire company, theatre company, or hotel company, bridge company, and ferry company, incorporated, they shall petition in writing the Superior or Inferior Court of the county where such association may have been formed, or may desire to transact business for that purpose, setting forth the object of their association, and the privilege they desire to exercise, together with the name and style by which they desire to be incorporated ; and said Court *shall pass a rule or order*, directing said petition to be entered of record on the minutes of said Court."

Section 2 enacts " That when such rule or order is passed, and said petition is entered of record, the said companies or associations shall have power respectively, under and by the name designated in their petition, to have and use a common seal ; to contract, and be contracted with ; to sue, and be sued ; to answer, and be answered unto in any Court of Law, or Equity ; to appoint such officers as they may deem necessary ; and to make such rules and regulations as they may think proper for their own government : not contrary to the Laws of this State :

VOL. XIV. 11

but shall make no contracts, or purchase, or hold any property of any kind, except such as may be absolutely necessary to carry into effect the object of their incorporation. Nothing herein contained, shall be so construed as to confer Banking or Insurance privileges on any company or association herein enumerated; and the individual members of such manufacturing, trading, theatre, ice, and hotel companies, shall be bound for the punctual payment of all the contracts of said companies, as in case of partnership."

The third section declares that "No company or association shall be incorporated under this act, for a longer period than fourteen years; but the same may be renewed whenever necessary, according to the provisions of the first section of this act."

The fourth section confers upon the Superior and Inferior Courts, respectively, the power to change the names of individuals.

Section fifth. "For entering any of said petitions and orders, and furnishing a certified copy thereof, the Clerk shall be entitled to a fee of five dollars; except in cases of applications by individuals for the change of names—in which case, the Clerk of said Court shall be entitled to the fee of one dollar.— And that such certified copy shall be evidence of the matters therein stated in any Court of Law and Equity in this State." (*Cobb's Digest*, 542, 3.)

By the act of 1845, the provisions of the act of 1843, are extended to all associations and companies whatever, except Banks and Insurance companies : and the individual members of all such incorporations are made personally liable for all the contracts of said associations or companies. (*Ibid.*)

The argument against the validity of the charter of the Franklin Bridge Company, created under these Statutes, is this :

[1.] That in England, corporations are created and exist by prescription; by Royal Charter; and by Act of Parliament.— With us, they are created by authority of the Legislature, *and not otherwise.* That to establish a corporation, is to enact a law; and that no power but the Legislative body can do this.

[2.] That Legislative power is vested, under our Constitution, in the General Assembly, to consist of a Senate and House of Representatives, to be elected at stated periods, by the citizens of the respective counties.

[3.] And that the General Assembly is bound to exercise the power of making laws, thus conferred upon them, by the people, in the primordial compact, in the mode therein prescribed, and in none other; and that a law made in any other mode is unconstitutional and void. That the Legislature is but the agent of their constituents; and that they cannot transfer authority delegated to them to any other body, corporate or otherwise—not even to the Judiciary, a co-ordinate department of the government, unless expressly empowered by the Constitution to do so. That to do this, would be to violate one of the fundamental maxims of jurisprudence, as well as of political science, namely: *delegata potestas, non potest delegari.* That to do this, would not only be to disregard the constitutional inhibition, which is binding upon the representative, but by shifting responsibility, introduce innovations upon our system, which would result in the overthrow and ultimate destruction of our political fabric.

The constitutional inquiry thus presented, is an exceedingly grave one. It reaches far beyond the case made in the Bill of Exceptions, and extends to the whole range of topics which fall under Legislative cognizance. In the view we take, however, of the Statutes before us, no such proposition as that which has been discussed, is presented for our adjudication. And we rejoice that it is so—not only on account of the delicacy of the task, in pronouncing an act of the Legislature unconstitutional and void; one which is never-justifiable, unless the case is clear and free from doubt; and even then, one might almost be forgiven for shrinking from the performance of a duty, which would be productive of such incalculable mischief and confusion. Bridges have been built at a heavy expense; manufacturing and innumerable other associations, have been formed in Georgia, and are in full operation, under charters incorporated under this law. And in view of the consequences, any Court

might hesitate, unless the repugnance between the Statute and the Constitution, was so palpable as to admit of no doubt, and produce a settled conviction of their incompatibility with each other.

[4.] It was formerly asserted, that in England, the act of incorporation must be the *immediate* act of the King himself, and that he could not grant a license to another, to create a corporation. (10 *Reports*, 27.) But Messrs. Angell and Ames, in their Treatise on Corporations, state that the law has since been settled to the contrary; and that the King may not only grant a license to a subject to erect a particular corporation; but give a general power, by charter, to erect corporations indefinitely; on the principle that *qui facit per alium, facit per se;* that the persons to whom the power is delegated, of establishing corporations, are only an instrument in the hands of the Government. (1 *Kyd* 50; 1 *Black. Comm. Ang. & Am.* 63.)

Before the revolution, charters of incorporation were granted by the proprietaries of Pennsylvania, under a derivative authority from the Crown; and those charters have since been recognized as valid. (3 *Wilson's Lectures,* 409.) A similar power has been delegated by the Legislature of Pennsylvania, with regard to churches. (7 *S. & R.* 517.) The acts of the instrument in these cases, become the acts of the mover, under the familiar maxim above mentioned. (*See also* 1 *Missouri, R.* 5.)

[5.] Our opinion is, that no Legislative power is delegated to the Courts by the acts under consideration. There is simply a ministerial act to be performed—no discretion is given to the Courts. The duty of passing the rule or order, directing the petition of the corporators to be entered of record on the minutes of the Court, setting forth to the public the object of the association, and the privilege they desire to exercise, together with the name and style by which they are to be called and known, is made *obligatory* upon the Courts; and should they refuse to discharge it, a mandamus would lie to coerce them. It is true, the Legislature has seen fit to use the Courts

The Franklin Bridge Co. *vs.* Young Wood.

for the purpose of giving legal form to these companies. But it might have been done in any other way. Under the Free Banking Law of 1838, instead of petitioning the Court, and having the order passed and entered upon its minutes, the certificate, specifying the name of the association; its place of doing business; the amount of its capital stock; the names and residence of the shareholders; and the time for which the Company was organized, is required merely to be proven, and acknowledged, and recorded in the office of the Clerk of the Superior Court, where any office of the Association is established, and a copy filed with the Comptroller General. (*Cobb's Digest,* 107, 8.

And so under the Act of 1847, authorizing the citizens of this State, and such others as they may associate with them, to prosecute the business of manufacturing, with corporate powers and privileges. The persons who propose to embark in that branch of business, are required to draw up a declaration, specifying the objects of their association, and the particular branch of business they intend carrying on, together with the name by which they will be known as a corporation, and the amount of capital to be employed by them; which declaration is required to be first recorded in the Clerk's office of the Superior Court of the county where such corporation is located, and published once a week for two months in the two nearest Gazettes: which being done, it is declared that said association shall become a body corporate and politic, and known as such, without being specially pleaded in all Courts of Law and Equity in this State; to be governed by the provisions, and be subject to the liabilities therein specified. (*Cobb's Digest,* 439, 440.

In these two instances, and others which might be cited, the Legislature have dispensed with the action of the Courts, or of any other agency to carry out their enactments, with regard to these various associations; which have become the usual and favorite mode of conducting the industrial pursuits of the civilized world in modern times.

All these Statutes were complete as laws when they came from the hands of the Legislature; and did not depend for

their force and efficacy, upon the action or will of any other power. It is true that they could only take effect upon the happening of some event, such as the filing the petition or declaration, and giving publicity to the purpose of the association, in the mode prescribed by the act. But if this were a good reason for regarding these Statutes as invalid, then how few corporations could abide the test. For it requires the *acceptance* of the charter, to create a corporate body; for the government cannot compel persons to become an incorporated body, without their consent. And this consent, either express or implied, is generally subsequent, in point of time, to the creation of the charter. And yet, no charter that we are aware of, has been adjudged invalid, because the law creating it and previously defining its powers, rights, capacities and liabilities, did not take effect until the acceptance of the corporate body, or at least a majority of them was signified.

The result, therefore, of our deliberation upon this case is, that the Acts of 1843 and 1845, vesting in all associations, except for Banking and Insurance, the power of self-incorporation, do not impugn the constitution; and that the Charter of the Franklin Bridge Company, and all others, created under them, and in conformity to their provisions, are legal and valid. With the policy of these Statutes, we have nothing to do. The province of this, and all other Courts, is *jus dicere*, not *jus dare*.

Judgment reversed.