## FOY & SHEMWELL et al. v. GEORGIA-ALABAMA POWER CO. et al.

## SAME v. GEORGIA–ALABAMA POWER CO.

(District Court, S. D. Georgia.   April 23, 1924.)

Nos. 51, 52.

1. **Corporations ⬤634—Foreign corporation held to have accepted order of domestication.**

   Where a North Carolina corporation took all steps prescribed for domestication by Acts Ga. 1920, p. 151, inclusive of order of domestication, except filing certified copy of proceedings with secretary of state, and exercised the right of eminent domain, *held*, that it accepted order of domestication, though there was no formal acceptance thereof.

2. **Corporations ⬤634—Charter, or order of domestication, must be accepted.**

   Generally a charter must be accepted before corporation exists, and same principle applies to domestication.

3. **Corporations ⬤634—Acceptance of charter or order of domestication need not be proved by formal acts subsequent to grant of charter.**

   Acceptance of a charter or order of domestication need not be proved by formal acts, or acts in pais subsequent to grant of the charter.

4. **Corporations ⬤634—Acceptance of domestication cannot be revoked.**

   Acceptance of domestication may be revoked at any time prior to order of domestication, but not subsequent thereto.

5. **Evidence ⬤73—Acceptance of charter presumed from application.**

   If a charter is granted after having been applied for, acceptance may be presumed.

6. **Removal of causes ⬤27—Domestication of foreign corporation held not to prevent removal of suit against it.**

   Domestication of a North Carolina corporation, under Acts Ga. 1920, p. 151, *held* not to prevent removal of suit against it in Georgia to federal court, under Const. U. S. art. 3, § 2.

7. **Removal of causes ⬤3—Act purporting to prevent removal of causes against domesticated foreign corporation held unconstitutional.**

   Acts Ga. 1920, p. 151, providing that domesticated foreign corporations shall not have power to remove causes to federal courts, *held* to violate Const. U. S. art. 3, § 2.

In Equity.   Stockholders' bill by Foy & Shemwell and others against the Georgia-Alabama Power Company and others, and accounting bill by Foy & Shemwell and others against the Georgia-Alabama Power Company.   On motions to remand to the state court.   Motions denied.

Alston, Alston, Foster & Moise, of Atlanta, Ga., and Pope & Bennet and Lippitt & Burt, all of Albany, Ga., for plaintiffs.

Little, Powell, Smith & Goldstein, of Atlanta, Ga., and Milner & Farkas, of Albany, Ga., for defendants.

BARRETT, District Judge.   [1] Bill No. 51 in the caption is by certain stockholders of the Georgia-Alabama Power Company against said company and others; No. 52 is against such company alone.   Both were brought in the superior court of Dougherty county, Ga.   Removal of each was had to the District Court of the United States, and in each a motion to remand is made.   Both parties agree that both causes are removable, if the Georgia-Alabama Power Company is, for jurisdictional purposes, a citizen of North Carolina, and not a citizen of Georgia.

The Georgia-Alabama Power Company (hereinafter called company) was, prior to August 17, 1920, chartered under the laws of the state of North Carolina, and was a citizen of said state for all purposes. On August 17, 1920, there was approved an act of the General Assembly of the state of Georgia (Acts 1920, p. 151) captioned:

"An act to authorize foreign corporations doing business in the state of Georgia to become domesticated and to provide the means therefor and the consequence thereof."

Such act provides that any foreign corporation, desiring to be domesticated, shall file in the office of the clerk of the superior court of the county in Georgia wherein it desires to have its principal place of business a petition, showing that it desires to become domesticated, and shall set out a certified copy of the charter granted by its home state and a certified copy of the resolution adopted by a majority of its stockholders authorizing the filing of such petition, which petition shall be published in the manner required by the laws of this state for incorporation by the superior courts. After such publication the petition shall be examined by the judge of the superior court, and, if it is found that the purpose "of said corporation is not against the public policy of the state, an order shall be entered domesticating the said company." If any of the provisions of the home charter are such as would not have been granted by Georgia, "such powers shall not be exercised within this state." The domestication shall extend for 20 years, unless the original charter would expire earlier, in which event only to the duration of the original charter, unless it be renewed by the home state. "A certified copy of the proceedings granting said petition shall be filed with the secretary of this state." "The petition shall state the principal office of said company in Georgia, the amount of capital stock authorized, the amount of capital stock subscribed for, whether preferred or common, and the amount actually paid. The said corporation shall have no power which it could not have acquired, if it had been incorporated under the laws of Georgia. The state of Georgia shall have the same visitorial power over such domesticated corporations as it has over corporations created under the laws of Georgia."

After compliance with the requirements of such act, there was passed by the judge of the superior court of Dougherty county, Ga., an order domesticating the Georgia-Alabama Power Company. Thereafter there were certain condemnation proceedings instituted and contracts entered into by said company, in which it was recited that such company was a Georgia corporation. A certified copy of the proceedings of domestication was not filed with the secretary of state of Georgia. There was no formal acceptance of the domesticating order, and there was introduced an affidavit of the president of said company that, "at one time said corporation decided to domesticate under the laws of Georgia * * * of 1920, page 151, but after filing its petition and certified copies in the clerk's office of the superior court of Dougherty county said company decided not to domesticate, and so advised and instructed its attorneys; that said company has never exercised any rights or privileges of a domesticated corporation, nor has said company by any corporate act accepted the domestication of said corporation."

[2, 3] 1. Was said company domesticated under the act of 1920? It is urged that acceptance, either formal or by conduct, is essential; and that neither the precedent act of the stockholders directing the application for domestication nor the acts in pais are sufficient to constitute acceptance. It is beyond question that generally a charter must be accepted before the corporation exists, and the same principle applies to domestication. Fletcher, Cyclopedia Corporations, vol. 1, § 405, and volume 8, § 5712; Bridge Co. v. Wood, 14 Ga. 80; Brooke v. Day, 129 Ga. 694, 59 S. E. 769; Adams v. Overland Co., 27 Ga. App. 531, 109 S. E. 413. But such acceptance need not be proved by formal acts or acts in pais subsequent to the grant of the charter. I do not overlook that in Brooke v. Day, 129 Ga. supra, it is stated that the acts of acceptance must be after the grant of the charter. I think that decision must be limited to the special facts, and is not controlling or convincing under the facts of this case. Indeed, it has been held that:

"In the case of corporations formed under *general laws* [our italics], no acceptance is necessary. Under such circumstances, compliance by the corporators with the statutory conditions precedent to incorporation takes the place of an acceptance and is all that is required." Fletcher, Cyclopedia Corporations, vol. 1, § 405.

The resolution adopted by the stockholders of this North Carolina corporation contained this language:

"That this company do become domesticated under the laws of the state of Georgia, and that it do accept the terms, conditions, and privileges of a certain act of the Legislature of the state of Georgia approved on the ———— day of August, 1920, entitled 'An act to authorize foreign corporations doing business in the state of Georgia to become domesticated and to provide the means therefor and the consequences thereof.'"

And thereafter every step prescribed for the domestication, inclusive of the grant of the order of domestication by the judge of the superior court of Dougherty county, was taken. It is true that the direction that "a certified copy of the proceedings granting said petition shall be filed with the secretary of this state" was not complied with. This failure I consider a mere informality or irregularity. This provision of the statute is very different from those statutes forbidding doing any business in a state by a foreign corporation until a certified copy of its charter shall have been filed with the secretary of state, as discussed in R. C. L. vol. 12, §§ 38 and 39.

[4] Acceptance of domestication was formal, affirmative, and definite, though prior to the order of domestication. Such acceptance might have been revocable at any time prior to the grant of the order of domestication, but not subsequent to its being an accomplished fact. "The government cannot compel persons to become an incorporated body without their consent. And this consent, either express or implied, is *generally subsequent* [italics ours], in point of time, to the creation of the charter." Bridge Co. v. Wood, 14 Ga. 80–86.

[5] The principle which I consider sound, and therefore controlling, is that stated in City of Atlanta v. Gate City Gas Co., 71 Ga. 106 (1):

"If a charter is granted after having been applied for, acceptance may be presumed from such previous application."

That certain provisions of the general law of Georgia as to incorporating make this inapplicable to corporations thereunder, and that such decision was in a case where a charter was granted by a special act of the Legislature, do not impair its soundness or prevent its applicability here, and especially in view of the language of the resolution quoted above.

Furthermore, there were ample acts in pais to prove acceptance of domestication. The chief benefit to be obtained from domestication was the exercise of the right of eminent domain, and in the exercise, of this right thus obtained it was recited, on at least two occasions, that this company was domesticated under the laws of Georgia, or was a Georgia corporation, and one or more contracts contained like recitals. Error in such recital, if error it was, cannot be laid solely upon the unauthorized acts of the attorneys at law, for the vice president and secretary of the company signed at least some of such papers. Such proof of acceptance is sufficient. Louisville Trust Co. v Louisville, etc., Ry. Co., 75 Fed. 433(4), 444, 22 C. C. A. 378 (C. C. A. Sixth Circuit); Fletcher, Cyclopedia Corporations, vol. 1, §§ 246 and 405, and volume 8, § 5712. Acceptance thus having been completed, no subsequent resolution of the company can establish that such acceptance was not accomplished.

[6] 2. Did such domestication make the North Carolina company a Georgia corporation, or make a separate corporation, and, if so, was such corporation thus made a citizen of Georgia for jurisdictional purposes, under the judicial article of the Constitution of the United States (section 2, art. 3)? This act did not create a Georgia corporation. While domestication is different from license. (Angier v. East Tenn., etc., Ry. Co., 74 Ga. 634), it is not of itself equivalent to incorporation. If incorporation, as distinguished from domestication, was in contemplation, that portion of the act would necessarily be unconstitutional, because not indicated in the caption, as required by our state Constitution (article 3, § 7, par. 8), that "no law or ordinance shall pass which refers to more than one subject-matter, or contains matter different from what is expressed in the title."

Throughout the act the accomplishment is domestication, and not incorporation. The foreign corporations shall have the power to become "domesticated," and upon becoming "domesticated" such corporations shall have the same powers as similar corporations created under the laws of Georgia; the foreign corporations which desire to become "domesticated." The judge of the superior court shall, upon conditions, enter an order "domesticating" said company, provided that its "domestication" shall extend for a period, etc. The "domestication" shall extend only to the duration of the original charter of said foreign corporation. Upon the grant of the petition for "domestication," a certified copy of the proceedings granting said petition shall be filed with the secretary of state. "The said corporation shall have no power which it could not have acquired if it had been incorporated under the laws of Georgia. The state of Georgia shall have the same visitorial power over such domesticated corporations as it has over corporations created under the laws of this state." Does not this last sentence remove any vestige of doubt, and show that the act did

not intend to incorporate, but merely to domesticate, as distinguished from incorporation, and to give only such visitorial powers over this "domesticated corporation" as the state has over its own corporations?

Even, however, if the act authorized incorporation in Georgia, and all of the prerequisites were complied with, and this North Carolina corporation became a Georgia corporation, it could not become such for jurisdictional purposes, as against the aforesaid judicial article of the Constitution of the United States. A corporation of one state may become a corporation of another state for many purposes, even though it is not such as against the aforesaid judicial article. The United States Supreme Court says, in Louisville, etc., Ry. Co. v. Louisville Trust Co., 174 U. S. 562, 19 Sup. Ct. 821, 43 L. Ed. 1081:

"This court has often recognized that a corporation of one state may be made a corporation of another state by the Legislature of that state, in regard to property and acts within its territorial jurisdiction."

—citing many cases, and in the same case quoting from the opinion in Penn. Co. v. St. Louis, etc., R. Co., 118 U. S. 290, 296, 6 Sup. Ct. 1094, 1096 (30 L. Ed. 83):

To do so "the language used must imply creation or adoption in such form as to confer the power usually exercised over corporations by the State, or by the Legislature, and such allegiance as a state corporation owes to its creator. The mere grant of privileges or powers to it as an existing corporation, without more, does not do this."

The language quoted from the last two cases is given in substance by Mr. Simkins in Federal Practice, at page 335, supporting the text with many citations.

But this does not prevent removal to the federal courts, as provided by the aforesaid judicial article of the Constitution of the United States, even when in formal language, as in the act of the Legislature of Georgia of 1920, the definite prohibition is embodied that such domesticated corporation "shall no longer have that power of removing causes to the United States courts which inheres in foreign corporation." It is universally acknowledged that statements contradictory of this proposition may be found in some earlier decisions of the Supreme Court of the United States, but there has for many years been adopted and followed, without exception, a policy sustaining this proposition. More than a citation of some of the cases would be superfluous and valueless. Terral v. Burke Construction Co., 257 U. S. 529, 42 Sup. Ct. 188, 66 L. Ed. 352, 21 A. L. R. 186; Wisconsin v. Phila. & Reading Coal Co., 241 U. S. 329, 36 Sup. Ct. 563, 60 L. Ed. 1027; Harrison v. St. Louis, etc., R. Co., 232 U. S. 318, 34 Sup. Ct. 333, 58 L. Ed. 621, L. R. A. 1915F, 1187; Southern Ry. v. Allison, 190 U. S. 326, 23 Sup. Ct. 713, 47 L. Ed. 1078; St. Louis, etc., R. Co. v. James, 161 U. S. 545, 16 Sup. Ct. 621, 40 L. Ed. 802; Fletcher, Cyclopedia Corporations, vol. 1, § 390, at page 833; Simkins' Federal Practice, pp. 335, 338.

The seeming exception to this rule is where the Legislatures of several states consolidate a corporation under the laws of each of such states, and the consolidated corporation becomes a citizen of each of such states. Nashua, etc., Corp. v. Boston, etc., Corp., 136

U. S. 356, 10 Sup. Ct. 1004, 34 L. Ed. 363; Graham v. Boston, etc., Co., 118 U. S. 169, 6 Sup. Ct. 1009, 30 L. Ed. 196, and various other authorities cited in Simkins' Federal Practice, p. 336. Such seeming exception can be readily reconciled to the principles above stated, and is not of any controlling effect here.

The ingenious argument has been advanced that, when a foreign corporation compulsorily becomes incorporated in another state, such incorporation would be in violation of the aforesaid judicial article of the Constitution of the United States; but that, when a corporation voluntarily procures such incorporation, the result would not be the same. This argument is not convincing, in view of the reasoning followed in the several cases cited, and those cited therein, as, for instance, in Harrison v. St. Louis, etc., R. R., 232 U. S. 328, 34 Sup. Ct. 335, 58 L. Ed. 621, L. R. A. 1915F, 1187:

"It may not be doubted that the judicial power of the United States, as created by the constitution and provided for by Congress pursuant to its constitutional authority, is a power wholly independent of state action, and which therefore the several states may not by any exertion of authority in any form, directly or indirectly, destroy, abridge, limit, or render inefficacious. The doctrine is so elementary as to require no citation of authority to sustain it."

And again in the same case, on page 333 (34 Sup. Ct. 337):

" * * * No authority is afforded by those two cases for the conception that it is within the power of a State in any form, directly or indirectly, to destroy or deprive of a right conferred by the Constitution and laws of the United States."

The doctrine is clearly deducible from a reading of these authorities that both persuasion and coercion are prohibited.

[7] 3. But it may be said that the result of "domestication" is, as provided by the said act of August 17, 1920, that such domesticated corporation "shall no longer have that power of removing causes to the United States courts which inheres in foreign corporations," and therefore such right of removal does not exist, independent of whether for ordinary jurisdictional purposes the said company is still a North Carolina corporation; that such company waived and relinquished the right of removal, which it had before domestication, and would have had after domestication, except for the foregoing prohibition.

Fundamentally there is no difference between the effect of the foregoing judicial article of the Constitution of the United States upon a state law authorizing a license to do business upon condition that the right of removal to the federal court by the foreign corporation shall be waived or relinquished and its effect upon the foregoing act of 1920. The latest answer of the Supreme Court of the United States, made by Chief Justice Taft, in the case of Terral v. Burke Construction Co., supra, is as follows:

"The cases in this court in which the conflict between the power of a state to exclude a foreign corporation from doing business within its borders, and the federal constitutional right of such foreign corporation to resort to the federal courts has been considered cannot be reconciled. [Here follows citations of cases from 20 Wall. through 245 U. S.] The principle established by the more recent decisions of this court is that a state may not, in imposing conditions upon the privilege of a foreign corporation's doing business in the

state, exact from it a waiver of the exercise of its constitutional right to resort to the federal courts, or thereafter withdraw the privilege of doing business because of its exercise of such right, whether waived in advance or not. The principle does not depend for its application on the character of the business the corporation does, whether state or interstate, although that has been suggested as a distinction in some cases. It rests on the ground that the federal Constitution confers upon citizens of one State the right to resort to federal courts in another, that state action, whether legislative or executive, necessarily calculated to curtail the free exercise of the right thus secured is void because the sovereign power of a State in excluding foreign corporations, as in the exercise of all others of its sovereign powers, is subject to the limitations of the supreme fundamental law."

The foregoing prohibition against removal to the federal courts is unconstitutional, as violative of the judicial article (section 2, art. 3) of the Constitution of the United States.

The motions to remand are denied.