29444. FORRESTER, commissioner, *v.* CONTINENTAL GIN COMPANY.

120

DECIDED MARCH 20, 1942.    REHEARING DENIED APRIL 1, 1942.

*Ellis G. Arnall, attorney-general, Andrew J. Tuten, Claude Shaw,* for plaintiff in error.

*Crenshaw, Hansel & Gunby, Russell M. Striplin,* contra.

SUTTON, J.    Continental Gin Company brought suit against T. Grady Head in his official capacity as State Commissioner of the Department of Revenue for refund of excess occupational taxes alleged to have been paid by it for the years 1932 to 1935, inclusive, and 1937 to 1940, inclusive.    It was alleged: The plaintiff was incorporated under the laws of the State of Delaware on November 27, 1899, and became domesticated in Georgia on November 12, 1926.    Its principal office and place of doing business is not in Georgia, but in so far as it does do business in Georgia its principal place of doing business is in Fulton County.    On December 20, 1939, it paid the State Revenue Commissioner the sum of $5100, being the difference between the occupational taxes of a domestic corporation and those of a foreign corporation as determined for the years 1932 to 1935, inclusive, and as set out in detail in the petition.    It also paid the sum of $5200, being the difference between the occupational taxes of a domestic corporation and those of a foreign corporation as determined for the years 1937 to 1940, inclusive, and as set out in detail in the petition.

The said total payment of $10,300 was erroneously and illegally collected from it. On January 31, 1940, the plaintiff, as provided by law, filed with the State Revenue Commissioner its claim for refund as per copy attached to the petition as exhibit "A" and made a part thereof, but the defendant has never acted thereon and has neither approved nor disapproved the claim. Judgment was prayed for $10,300. The court overruled a general demurrer filed by the defendant, and the case is now before this court on bill of exceptions brought by J. M. Forrester, as State Commissioner of Revenue, as successor in office to the said T. Grady Head, and the State Department of Revenue as plaintiffs in error, and error is assigned on the aforesaid judgment. The sole question here presented, as conceded by all parties, is whether or not a domesticated corporation is subject to payment of occupational taxes for the years involved, as in the case of a corporation organized under the laws of this State, or as in the case of a foreign corporation doing business or owning property in this State. If the latter, it is conceded that the State has collected from the plaintiff $10,300 more than it was obligated to pay as occupational taxes, and the trial court properly overruled the general demurrer.

A consideration of the domestication statute, as embodied in the Code, § 22-1601 et seq., and the statutes providing for the payment by corporations of occupational taxes will determine the issue. The domestication statute of 1920 (Ga. L. 1920, p. 151) as amended by the act of 1926 (Ga. L. Ex. Sess. 1926, p. 46) is codified in §§ 22-1601 to 22-1609, inclusive. Code § 22-1601 provides: "All foreign corporations doing business in this State, or which may hereafter do business in this State, and whose business is not against the public policy of this State, shall have the power to become domesticated in the manner hereinafter pointed out; and upon becoming domesticated such corporations and the stockholders thereof shall have the same powers, privileges, and immunities as similar corporations created under the laws of this State, and the stockholders thereof have, subject to the same obligations, duties, liabilities, and disabilities as if originally created under the laws of this State, and shall no longer have that power of removing causes to the United States courts which inheres in foreign corporations." § 22-1601. The "foreign corporations" referred to in the preceding section shall file a petition, etc. § 22-1602.

§ 22-1603 provides for publication of the petition. "After said publication the said petition shall be examined by the judge of the superior court of the county in which the application is filed if the same is filed in the superior court, or by the Secretary of State if the same is filed with the Secretary of State. In the event it is found that the purpose of said corporation is not against the public policy of this State, an order shall be entered domesticating the said company: Provided, however, that if any provisions of the charter of said corporation be such as would not have been originally granted if the charter had been applied for under laws of this State, such powers shall not be exercised within this State." § 22-1604. "The domestication of such foreign corporations shall extend for a period of 20 years with the privilege of renewal as is provided for similar corporations incorporated under the laws of this State, unless the charter of said foreign corporation would earlier expire; in which event domestication shall extend only to the duration of the original charter of said foreign corporation, unless the said charter be renewed by its home State, and certified copies of the renewals and amendments to said charter shall be filed in the office of the Secretary of State of this State." § 22-1605. Upon the granting of the petition for "domestication" by the judge of any superior court a certified copy of the proceedings granting said petition shall be filed with the Secretary of State and the petitioner shall pay the costs prescribed by the laws of this State "as though the said corporation had been originally incorporated under the laws of this State," etc. § 22-1606. The said corporation shall have no power which it could not have acquired "if it had been incorporated under the laws of this State." § 22-1607. "The State of Georgia shall have the same visitorial power over such domesticated corporations as it has over corporations *created under the laws of this State.*" (Italics ours.) § 22-1608. For the dissolution of corporations "thus domesticated." § 22-1609.

The plaintiffs in error contend that the effect of "domestication" under the Georgia statute is to *create* the corporation a corporation of this State just as if it had been otherwise incorporated under the laws of this State. We can not subscribe to this view. Domestication is not of itself the equivalent of incorporation. "Whether it was the intention of the domesticating State to create a new corporation or only to confer certain powers on the foreign

corporation is purely a question of legislative intention to be gathered from the language of the statutory or constitutional provision. It has been well said that 'it may not be easy in all such cases to distinguish between the purpose to create a new corporation which shall owe its existence to the law or statute under consideration, and the intent to enable a corporation already in existence under the laws of another State to exercise its functions in the State where it is so received. To make such a company a corporation of another State, the language used must imply creation or adoption in such form as to confer the power usually exercised over corporations by the State, or by the legislature, and such allegiance as a State corporation owes to its creator. The mere grant of privileges or powers to it as an existing corporation, without more, does not do this and does not make it a citizen of the State conferring such powers.' " 8 Fletcher Cyc. Cor. 524, § 4050. See also Penn. R. Co. v. St. Louis &c. R. Co., 118 U. S. 290, 296 (6 Sup. Ct. 1094, 1096, 30 L. ed. 83); Louisville &c. Ry. Co. v. Louisville Trust Co., 174 U. S. 562 (19 Sup. Ct. 821, 43 L. ed. 1081). But, say the plaintiffs in error, the domestication statute of Georgia also makes the domesticated corporations subject "to the same obligations, duties, liabilities, and disabilities as if originally created under the laws of this State, and shall no longer have that power of removing causes to the United States courts which inheres in foreign corporations," and thus creates a domesticated corporation of Georgia. As shown above, however, it is the intent of the legislature that is to be ascertained, and we do not think that these additional words necessarily establish as tenable the contention of the plaintiffs in error.

A corporation, for the privilege of becoming domesticated and thereafter enjoying the right of condemnation (see *Perry* v. *Folkston Power Co.*, 181 *Ga.* 527, 183 S. E. 58), might conceivably be willing to subject itself to obligations etc. which as a foreign corporation, without being domesticated, it might not be subject to, and the legislature might provide for domestication on such a basis without at the same time *creating* the corporation anew. So, the question arises: did the legislature of this State in providing for domestication in the language of the statute create a corporation, domesticated under its terms, a corporation of this State? That this is not true is, we think, well shown by Judge Barrett in Foy

& Shemwell *v.* Georgia-Alabama Power Co., 298 Fed. 643, in which the question arose as to whether or not the provision of the Georgia statute against removal of causes against a domesticated corporation was violative of the Federal constitution. In discussing the question whether or not the act created the domesticated North Carolina corporation a Georgia corporation it was said: "This act did not create a Georgia corporation. While domestication is different from license *(Angier* v. *East Tenn. etc. Ry. Co., 74 Ga.* 634), it is not of itself equivalent to incorporation. If incorporation, as distinguished from domestication, was in contemplation, that portion of the act would necessarily be unconstitutional, because not indicated in the caption, as required by our State constitution (article 3, § 7, par. 8), that 'no law or ordinance shall pass which refers to more than one subject matter, or contains matter different from what is expressed in the title.' Throughout the act the accomplishment is domestication, and not incorporation. The foreign corporations shall have the power to become 'domesticated,' and upon becoming 'domesticated' such corporations shall have the same powers as similar corporations created under the laws of Georgia; the foreign corporations which desire to become 'domesticated.' The judge of the superior court shall, upon conditions, enter an order 'domesticating' said company, provided that its 'domestication' shall extend for a period, etc. The 'domestication' shall extend only to the duration of the original charter of said foreign corporation. Upon the grant of the petition for 'domestication,' a certified copy of the proceedings granting said petition shall be filed with the Secretary of State. 'The said corporation shall have no power which it could not have acquired if it had been incorporated under the laws of Georgia. The State of Georgia shall have the same visitorial power over such domesticated corporations as it has over corporations created under the laws of this State.' Does not this last sentence remove any vestige of doubt, and show that the act did not intend to incorporate, but merely to domesticate, as distinguished from incorporation, and to give only such visitorial powers over this 'domesticated corporation' as the State has over its own corporations?" The conclusion reached by Judge Barrett is inescapable; the act *domesticates* a foreign corporation but does not thereby create such a corporation *a Georgia corporation.* It still remains a foreign corpo-

ration, but a corporation invested, by reason of domestication, with certain powers which it did not theretofore have, and the act also purports to place upon it burdens which, except for the domestication, it would not be under.

The acts imposing occupational taxes upon corporations sustain this view, and, as we shall demonstrate, did not, until 1941, exact from domesticated corporations occupational taxes on the same basis as corporations organized under the laws of Georgia, but rendered them liable as in the case of corporations organized under the laws of other States. In the act of 1929 (Ga. L. 1929, p. 84), amending the general tax act of 1927 (Ga. L. 1927, p. 56), which provided for an occupational tax upon domestic and foreign corporations in paragraphs 44 and 45 of section 1 thereof, based in each case upon the capital stock of the corporations, except as to insurance companies and sewing-machine companies which were separately taxed by other provisions of the act, it was provided by paragraph 44 of section 1: "All corporations incorporated under the laws of Georgia, and doing business therein, except those that are not organized for pecuniary gain or profit and those that neither charge nor contemplate charging the public for services rendered, in addition to all other taxes now required of them by law, are hereby required to pay each year an annual license or occupation tax as specified in the following scale:" (Then follows a schedule of "issued capital stock" from "not exceeding $10,000" to "over $22,000,000," with amount of occupational tax payable thereon, depending on the amount of issued capital stock, from $10 to $5000.) By paragraph 45 of section 1 it was provided: "All corporations incorporated or organized under the laws of any other State, nation or territory, and doing business in this State, except those companies that are not organized for pecuniary gain or profit and those that neither charge nor contemplate charging the public for services rendered, in addition to all other taxes now required of them by law, are hereby required to pay each year an annual license of [or] occupation tax for the privilege of carrying on its business within this State, as specified in the following scale:" (Then follows a schedule of "capital stock and surplus employed in this State" in amounts and specified taxes as mentioned above.) It is thus seen that the distinction made in the act of 1929 was between corporations "incorporated under the laws of Georgia" and

those "incorporated or organized under the laws of any other State," etc., no reference being made to "domesticated" corporations which by the act of 1920 (Ga. L. 1920, p. 151) as amended by the act of 1926 (Ga. L. Ex. Sess. 1926, p. 46), codified in Code § 22-1601, had previously been authorized.

In the act of 1931 (Ga. L. Ex. Sess. 1931, p. 76) the act of 1929, supra, was amended to read in paragraph 44 of section 1: "All corporations incorporated under the laws of Georgia, except those that are not organized for pecuniary gain or profit, in addition to all other taxes now required of them by law, are hereby required to pay each year an annual license or occupation tax as specified in the following scale:" (Then follows the same schedule of "issued capital stock" and taxes as in the aforementioned acts.) In paragraph 45 of section 1 of the act it was provided: "All corporations incorporated or organized under the laws of any other State, nation, or territory, and doing business or owning property in this State, except those companies that are not operated for pecuniary gain or profit, in addition to all other taxes now required of them by law, are hereby required to pay each year an annual license or occupation tax for the privilege of carrying on its business within this State, as specified in the following scale:" (Then follows the same schedule of "capital stock and surplus employed in the State," together with applicable tax.)

In the general tax act of 1935 (Ga. L. 1935, pp. 11, 25) it was provided in paragraph 43 of section 2: "All corporations incorporated under the laws of Georgia, except those that are not organized for pecuniary gain or profit and domesticated foreign corporations, in addition to all other taxes now required of them by law, are hereby required to pay each year an annual license or occupation tax as specified in the following scale:" (Then follows a schedule of "issued capital stock" and taxes as in the aforementioned acts.)   In paragraph 44 of section 2 it was provided: "All corporations incorporated or organized under the laws of any other State, nation, or territory, and doing business or owning property in this State, except those companies that are not operated for pecuniary gain or profit, in addition to all other taxes now required by [of] them by law, are hereby required to pay each year an annual license or occupation tax for the privilege of carrying on its business within this State, as specified in the following scale:"

(Then follows a schedule of "capital stock and surplus employed in the State," together with applicable tax, as in the preceding act.)

In the act of 1941 (Ga. L. 1941, p. 204), amending the general tax act of 1935, supra, it was provided in section 1 that paragraph 43 of the act be amended to read: "All corporations incorporated under the laws of Georgia, except those that are not organized for pecuniary gain or profit, and domesticated foreign corporations, in addition to all other taxes now required of them by law, are hereby required to pay each year an annual license or occupation tax as specified in the following scale: Domestic and domesticated foreign corporations are required to pay the same occupation tax as herein specified:" (Then follows a schedule of "issued capital stock" and taxes as in the preceding acts respecting domestic corporations.)

We have set forth the provisions of the various acts of the legislature on the subject of occupational taxes to be paid by corporations because Code §§ 92-2401 and 92-2403 contain only the law through the year 1931 and, consequently, do not represent the final expression of the legislature on the subject.

When the act of 1929, supra, was enacted the "domestication" statute was already in effect. Nevertheless, it is plain that the legislature, in its plan of classification of corporations to be taxed for the privilege of doing business in this State, used only two designations, viz., (1) "all corporations incorporated under the laws of Georgia" and (2) "all corporations incorporated or organized under the laws of any other State," etc., thus eliminating any specific consideration of "domestication" and having in mind only the source of incorporation. In 1931 the same classification was followed. "Those that are not organized for pecuniary gain or profit" were exempted from each classification. It could not reasonably be said that in using these two general classifications the legislature intended to place "domesticated" corporations in the class which would be subject to the higher taxes, because it is a fundamental rule that statutes levying taxes should be construed most strongly against the Government whenever there is any doubt as to their application to the taxpayer. "'Statutes which impose restrictions upon trade or common occupations, and which levy an excise or tax upon them, must be construed strictly;' 'statutes

levying duties or taxes upon subjects or citizens are to be construed most strongly against the government and in favor of their subjects or citizens, and their provisions are not to be extended, by implication, beyond the clear import of the language used;' 'revenue laws are neither remedial statutes nor laws founded upon any permanent public policy, and are not, therefore, to be liberally construed; and, hence, whenever there is a just doubt, that doubt should absolve the taxpayer from his burden.'" *Standard Oil Co.* v. *Swanson,* 121 *Ga.* 412, 414 (49 S. E. 262). The same act in each case deals with the two classifications, and a proper construction requires a holding that, under the acts of 1929 and 1931, supra, a corporation, not created under the laws of Georgia, although *domesticated* therein, is placed in the category of "all corporations incorporated or organized under the laws of any other State" etc. in respect to liability for occupation taxes.

This view is reinforced when we consider the subsequent legislation on the same subject. By the act of 1935, supra, the legislature removed all doubt as to whether a "domesticated" corporation should be required to pay occupation taxes on the same basis as a Georgia corporation, in that it enacted in paragraph 43 of section 1 of the act that all corporations incorporated under the laws of Georgia, *except* those that are not organized for pecuniary gain or profit *and domesticated foreign corporations,* in addition to all other taxes now required of them by law, shall pay, etc. The plaintiff in error, arguing first that by the domestication statute the claimant became or was created a corporation of this State, contends that this court should construe the act with those already mentioned as a legislative intent to place the claimant in the category of a Georgia corporation, and that to do this may properly insert a comma following the word "profit," so that it would read "all corporations incorporated under the laws of Georgia . . and domesticated foreign corporations" etc., thus leaving as the only exception to the class liable for occupational taxes under the schedule in paragraph 43 "those that are not organized for pecuniary gain or profit." This contention can not be upheld, because to do so would be violative of a fundamental rule that where the provision of a statute is clear and unambiguous it must be taken to mean what has been clearly expressed and no occasion for construction exists. See *Neal* v. *Moultrie,* 12 *Ga.* 104, 110; *Hopkins*

v. *Florida Central &c. R. Co.*, 97 *Ga.* 107, 109 (25 S. E. 452); *Barnes* v. *Carter*, 120 *Ga.* 895, 898 (48 S. E. 387); *Standard Oil Co.* v. *State Revenue Com.*, 179 *Ga.* 371, 375 (176 S. E. 1); *Thomas* v. *Lumbermen's Mutual Casualty Co.*, 57 *Ga. App.* 434, 436 (195 S. E. 894). The provision of the statute here clearly and unmistakably names two exceptions by the use of appropriate commas, one of which is a "domesticated foreign corporation," and it is also to be noted that such excepted corporation is referred to as a "foreign" corporation. The subsequent act of 1941, supra, amended the act of 1935 by inserting a comma after the word "profit," thus withdrawing the exception of a "domesticated foreign corporation," leaving the provision to read "all corporations incorporated under the laws of Georgia, except those not organized for pecuniary gain or profit, and domesticated foreign corporations," etc. It is a well-established rule of construction that the meaning of one statute may be arrived at by a consideration of a subsequent act of the legislature on the same subject. "If it can be gathered 'from a subsequent statute in pari materia what meaning the legislature attached to the words of a former statute, this will amount to a legislative declaration of its meaning and will govern the construction of the first statute.'" *Barron* v. *Terrell*, 124 *Ga.* 1077, 1079 (53 S. E. 181). See also *Wingfield* v. *Kutres*, 136 *Ga.* 345, 349 (71 S. E. 474). Under the above-mentioned authorities the act of the legislature in inserting a comma, in 1941, after the word "profit," and thus withdrawing, as an exception from paragraph 43 of section 2 of the statute, "domesticated foreign corporations," was a distinct recognition by it that, under the previous act of 1935 supra, such corporations were specifically excepted from the classification of corporations which were liable for occupational taxes on the same basis as corporations incorporated under the laws of Georgia, and the manifestation of an intention to change the law so that thereafter such corporations would be liable for occupational taxes on the same basis as corporations which had been incorporated under the laws of Georgia.

The refund here sought covers excess payments from the year 1932 to the year 1940, inclusive, with the exception of the year 1936, in all of which period the plaintiff was subject to payment of occupational taxes only on the basis of a corporation organized under the laws of another State, notwithstanding the fact that it

had been "domesticated" in Georgia. The petition set forth a cause of action for refund of $10,300 and the action was authorized under § 34 (b) of the act of 1938 (Ga. L. Ex. Sess. 1937-1938, pp. 77, 95), codified as § 92-8436 in the cumulative pocket supplement to the annotated Code of 1933. The trial court did not err in overruling the general demurrer.

Nothing in *Head* v. *Rich*, 61 *Ga. App.* 293 (6 S. E. 2d, 73), s. c. 190 *Ga.* 680 (10 S. E. 2d, 183), is in conflict with or requires a different ruling from the one here made. In the *Rich* case it was ruled that, where a foreign corporation, domesticated in Georgia, pays all taxes in Georgia as provided by law the stock in such corporation is not subject to taxation under the intangibles-tax act of 1937 (Ga. L. Ex. Sess. 1937-1938, pp. 156, 163) but is exempt from taxation in the same manner as stock in a domestic corporation which pays all taxes which it is required to pay under the law of this State.

*Judgment affirmed. Stephens, P. J., and Felton, J., concur.*

ON MOTION FOR REHEARING.

SUTTON, J. The plaintiff in error contends that this court has misconstrued the Code, § 92-2401, which reads: "All corporations incorporated under the laws of Georgia, except those not organized for pecuniary gain or profit, in addition to all other taxes now required of them by law, are hereby required to pay each year an annual license or occupation tax as specified in the following scale: [A graduated scale with amount of tax being set out.] (Acts 1929, pp. 84, 85; 1931, Extra. Sess., p. 76)." No reference is made to Code § 92-2403, which reads: "All corporations incorporated or organized under the laws of any other State, Territory, or Nation, doing business or owning property in this State, except those not operated for pecuniary gain or profit, in addition to all other taxes now required of them by law, are hereby required to pay each year an annual license or occupation tax for the privilege of carrying on their businesses within this State, as specified in the following scale: [A graduated scale with amount of tax being set out.] (Acts 1929, pp. 84, 85; 1931, Extra. Sess., pp. 76, 80)." As pointed out by this court, it is necessary to consider the entire legislation on the subject of occupational taxes, and such a consideration establishes that until the act of 1941 (Ga. L. 1941, p. 204) the legislature, in providing for such taxes, used only two

classifications of corporations, (1) "all corporations incorporated under the laws of Georgia," and (2) "all corporations incorporated or organized under the laws of any other State," etc. By the act of 1941 the legislature specifically provided, for the first time, in dealing with occupational taxes, that "Domestic and domesticated foreign corporations are required to pay the same occupation tax as herein specified." Notwithstanding the fact that in the domestication statute of 1920, as amended by the act of 1926, it was *generally* provided that a domesticated corporation shall "be subject to the same obligations, duties, liabilities and disabilities as if originally created under the laws of this State," the classification used before 1941 overcomes the contention of the plaintiff in error in his motion for new trial that whether a domesticated corporation can escape taxation, as to occupational taxes, on the same basis as a domestic corporation it is immaterial to determine whether or not the plaintiff corporation was organized under the laws of another State. It is a fundamental rule of statutory construction that acts of the legislature in pari materia shall be construed together in order to determine the intent of the legislature. The domestication statute contains a *general* provision as to liability of a domesticated corporation "as if originally created under the laws of this State" but does not *incorporate* such a corporation as one "incorporated under the laws of Georgia," and by legislation on the *special subject* of occupational taxes the General Assembly has provided for collection of such taxes from corporations and has designated them under only two classifications. Until the act of 1941 (Ga. L. 1941, p. 204) no intention was manifested by the legislature, as to occupational taxes, to place a domesticated foreign corporation on the same basis as a domestic corporation. In 1935 (Ga. L. 1935, pp. 11, 25) the legislature specifically provided in paragraph 43 of section 2 of the act relating to occupational taxes that "domesticated foreign corporations" were excepted from paying on the same basis as corporations incorporated under the laws of Georgia, thus necessarily leaving them in the other classification mentioned in paragraph 44 of section 2 of the act, "all corporations incorporated or organized under the laws of any other State," etc. The act of 1935 was entirely free from ambiguity, and was an affirmative declaration of the class of corporations from which a domesticated foreign corporation was to be excepted,

i. e., excepted from corporations incorporated under the laws of Georgia, and removed any doubt, if any could reasonably arise, as to whether or not such a corporation could, under the act of 1929 (Ga. L. 1929, p. 84), as amended by the act of 1931 (Ga. L. Ex. Sess. 1931, p. 76), be held liable for payment of occupational taxes on the basis of a corporation incorporated under the laws of Georgia, as provided for in paragraph 44 of section 1 of each act, rather than being subject to liability only as a corporation incorporated or organized under the laws of any other State, etc.

Before and after the enactment of the domestication statute the legislature made special provision for the collection of occupational taxes from the corporations. In 1913 (Ga. L. 1913, p. 34), in 1923 (Ga. L. Ex. Sess. 1923, p. 20), and in 1927 (Ga. L. 1927, p. 56) it had provided for such taxes, both as to domestic and foreign corporations, based in each case on the amount of the capital stock of the corporation. Until the act of 1927 was superseded by the act of 1929 (Ga. L. 1929, p. 84) no question could reasonably have arisen whether a domesticated corporation was liable for occupational taxes on the basis of a domestic corporation or on the basis of a foreign corporation, because in each case the tax was based on the entire capital stock of the corporation. In the act of 1929, amending the general tax act of 1927, it was provided that a corporation incorporated under the laws of Georgia should pay on the basis of the "issued capital stock" and that a corporation incorporated or organized under the laws of another State should pay on the basis of "capital stock and surplus employed in this State." Paragraph 44 of section 1 of that act, as amended by the act of 1931 (Ga. L. Ex. Sess. 1931, p. 76), has been codified as "All corporations incorporated under the laws of Georgia, except those not organized for pecuniary gain or profit, in addition to all other taxes now required of them by law, are hereby required to pay each year an annual license or occupation tax as specified in the following scale" etc., and the plaintiff in error contends that this Code section, as well as the general provision of the domestication statute, requires a holding that the plaintiff corporation is obligated to pay occupational taxes on the same basis as a domestic corporation. But in the act of 1929 the legislature maintained, with full knowledge of the domestication statute, the same two classifications it had theretofore employed, (1) all corporations incorporated under the laws

of Georgia and (2) all corporations incorporated or organized under the laws of any other State, etc., and section 1, paragraph 45, of that act, as amended by the act of 1931, supra, it was provided that the second class of corporations should pay on the basis of "capital stock and surplus employed in this State," the subject-matter being codified (§ 92-2403). In the act of 1929 it was further provided: "Be it further enacted by the authority aforesaid, and it is hereby enacted by authority of the same, that all laws and parts of laws in conflict herewith be and the same are hereby repealed." The domestication statute of 1920, as amended by the act of 1926, had not at that time been codified, and, hence, to destroy the effect of any provision of the domestication statute it was not necessary for the legislature to refer to any Code section, but it was sufficient to enact that "all laws and parts of laws in conflict herewith be and the same are hereby repealed."

It is clear, therefore, that the legislature, in maintaining the two classifications of corporations, and cognizant of the general provision of the domestication statute of 1920, as amended by the act of 1926, did not intend that a domesticated foreign corporation should be liable on the same basis as a domestic corporation, a corporation organized under the laws of Georgia, but on the basis of a corporation organized under the laws of another State, etc., and to prevent any impression that the general provision of the domestication act of 1920, as amended by the act of 1926 (subsequently codified, § 22-1601), that a domesticated corporation should be "subject to the same obligations, duties, liabilities, and disabilities as if originally created under the laws of this State," would control as to the payment of occupational taxes by a domesticated foreign corporation rather than the classification of "corporations incorporated or organized under the laws of any other State," etc., enacted that "all laws and parts of laws in conflict herewith be and the same are hereby repealed." To uphold the general provision of § 22-1601 (as contended by the plaintiff in error) as requiring payment of occupational taxes by a domesticated foreign corporation on the same basis as a domestic corporation would certainly be to hold, at the same time, that it conflicts with the special provision of the legislature as to payment of occupational taxes by a foreign corporation. Under the particular provision of the legislature above quoted, the general provision of

Code § 22-1601 would be of no force as respects collection of occupational taxes from a foreign corporation, though domesticated in Georgia, and even if it could be said that the general provision was unaffected by the subsequent repealing provision of later acts, the rule of construction that statutes in pari materia should be construed as one single scheme of legislation would require a holding that generally a domesticated corporation would be subject to liabilities as if created under the laws of this State but as to occupational taxes would be liable only on the basis of a foreign corporation, that is, one incorporated or organized under the laws of another State.

The plaintiff in error requests that this court state specifically whether or not the present suit is properly brought against the Commissioner of Revenue. In the opinion of this court it was said that "the action was authorized under § 34(b) of the act of 1938 (Ga. L. Ex. Sess. 1937-38, pp. 77, 95), codified as § 92-8436 in the cumulative pocket supplement to the annotated Code of 1933." The action was brought against the predecessor of the present commissioner "in his official capacity as commissioner of the Department of Revenue of the State of Georgia," and is therefore a suit against the State. *Southern Mining Co.* v. *Lowe,* 105 *Ga.* 352, 356 (31 S. E. 191); *Ramsey* v. *Hamilton,* 181 *Ga.* 365 (2) (182 S. E. 392); *Cannon* v. *Montgomery,* 184 *Ga.* 588, 591 (192 S. E. 206); *Roberts* v. *Barwick,* 187 *Ga.* 691, 695 (2) (1 S. E. 2d, 713); Pennoyer *v.* McConnaughy, 140 U. S. 1, 9 (11 Sup. Ct. 699, 35 L. ed. 363). To bring an action against the State the consent of the State must be had. Such consent was given in the act of 1938, supra, in section 34(a), (b).

*Wright* v. *Forrester,* 192 *Ga.* 864 (16 S. E. 2d, 873), cited and relied on by the plaintiff in error, is not contrary to what is here ruled. In that case it was merely held that mandamus did not lie against the then State Revenue Commissioner to compel him to approve a claim for refund of certain sums alleged to have been illegally exacted where a *suit* was maintainable against the State for refund.

*Rehearing denied. Stephens, P. J., and Felton, J., concur.*